UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

NANTWORKS, LLC, et al.,

Plaintiffs,

v.

NIANTIC, INC.,

Defendant.

Case No. 20-cv-06262-LB

**ORDER GRANTING MOTION TO DISMISS**

Re: ECF No. 23

**INTRODUCTION**

NantWorks, LLC — a company that "develops various technologies to advance healthcare, commerce, and digital entertainment" — sued Niantic, Inc. for infringing three NantWorks patents in Niantic's augmented-reality" game apps "Pokémon Go" and "Harry Potter: Wizards Unite."[1] The operative complaint asserts three patents: U.S. Patent Nos. 10,403,051 (claim one), 10,614,477 (claim two), and 10,664,518 (claim three). Niantic moved to dismiss the second claim — infringement of the '477 patent — on the ground that the claims of the '477 patent are directed to an abstract idea (reconciling a transaction based on a user's location) that lacks an inventive concept and thus is not patent-eligible subject matter under 35 U.S.C § 101. Niantic also moved to

[1] First Amend. Compl. ("FAC") – ECF No. 20 at 2 (¶¶ 2–3) (cleaned up). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

dismiss the claims for willful infringement and pre-suit induced infringement on the grounds that NantWorks did not allege Niantic's pre-suit knowledge of the patents-in-suit or its willfulness.[2] The court grants the motion.

**STATEMENT**

The '477 patent-in-suit is titled "Subscription Bill Service, Systems and Methods."[3] It was filed in 2019, issued this year, and claims priority to November 21, 2011.[4] It is directed to reconciling transactions between two computer-game players based on the first player's physical location.[5]

According to NantWorks, this is different than earlier transaction systems, which allowed only single-player to single-provider payments.[6] That meant that if two players needed to conduct a game transaction (say by an exchange of game points), they needed to use a centralized trader as an intermediary (e.g., player one transferred game points to the centralized trader, which in turn transferred the points to player two).[7] (Examples in the specification are (1) Apple EasyPay, which allows a user to pay a specific merchant, (2) Zoosh, which uses ultrasound to allow near-field transactions via two devices, and (3) a mobile device (apparently taught in a Blackberry patent application) that has components (a motion sensor and a processor) that recognize a movement pattern, determine a payment account from the movement, and send access information for the payment account to a transaction terminal "via an NFC [near-field communication] device of the mobile device."[8]) After giving these examples, the background section of the specification recites the following:

> Unfortunately, known existing transaction systems apparently fail to reconcile aspects of a transaction among multiple provider accounts or user accounts. Moreover, known existing transaction systems apparently fail to reconcile aspects of a transaction at least in part on

---

[2] Mot. – ECF No. 23.

[3] U.S. Patent No. 10,614,477 (filed May 24, 2019), Ex. B to Compl – ECF No. 1-2.

[4] *Id*; FAC – ECF No. 20 at 11 (¶ 35).

[5] '477 Patent, Ex. B to Compl – ECF No. 1-2 at 2 (at [57]).

[6] FAC – ECF No. 20 at 12 (¶ 36); '477 Patent, Ex. B to Compl – ECF No. 1-2 at 13 (1:35–44).

[7] '477 Patent, Ex. B to Compl – ECF No. 1-2 at 13 (1:35–44).

[8] *Id.* (1:44–61).

> derived object attributes. Thus, there is still a need for transaction systems capable of reconciling aspects of a transaction among multiple provider or user accounts.[9]

Multipart transactions were inefficient and slow. NantWorks alleges that the ’477 patent solves the inefficiency by allowing multiple transfers to different users in a single transaction, and it applies this allegedly novel solution to computer gaming and allows computer-game players to transfer game points to each other in one transaction based on one player’s physical location.[10] A computer can be configured to carry out the claimed system: “the computing devices comprise a processor configured to or programmed to execute software instructions stored on a tangible, non-transitory computer readable storage medium. . . .”[11] The patent does not describe any new hardware or software.[12]

The only ’477 claim cited in the first amended complaint (“FAC”) in support of the ’477 patent’s allegedly novel solution is claim 20.[13] It recites the following:

> A reconciliation system, comprising:
>
> at least one processor communicatively coupled with at least one memory storing instructions that, when executed by the at least one processor, cause the at least one processor to: determine, within a computer game, at least one object attribute based on physical location data associated with a first player whose physical location has been acquired by a location sensor;
>
> determine transaction amounts of game points for a first account of the first player and a second account of a second player, the transaction amounts being determined based on a reconciliation matrix and the at least one object attribute based on the physical location data; and
>
> cause reconciliation of a game transaction, when a criterion based on the physical location data of the first player is met within the computer game, among the first account and the second account in accordance with the determined transaction amounts, wherein the game transaction comprises a first transfer of at least a first amount of game points associated with the first account based on at least a portion of the transaction attributed to a first entity associated with the first account and a second transfer of at least a second amount of game

---

[9] *Id.* (1:62–2:2).

[10] FAC – ECF No. 20 at 2–13 (¶¶ 2–38).

[11] ’477 Patent, Ex. B to Compl – ECF No. 1-2 at 15 (5:34–37).

[12] Mot. – ECF No. 23 at 12 (making this point).

[13] FAC – ECF No. 20 at 12–13 (¶ 38) (quoting claim 20), 33–34 (¶¶ 99–102).

> points associated with the second account based on at least a portion of the transaction attributed to a second entity associated with the second account.[14]

In perhaps somewhat plainer language, in claim 20, the "reconciliation system" (1 ) determines the first player's physical location, (2) determines "transaction amounts of game points" for the first player's account and a second player's account based on the first player's physical location, and (3) reconciles a game transaction between the two players' accounts (when a game criterion — based on the first player's physical location — is met), where the game transaction is (a) a first transfer of game points associated with the first player's account (based on a transaction attributed to the first player) and (b) a second transfer of game points associated with the second player's account (based on a transaction attributed to the second player).

The other independent claims are 1 and 19, which repeat the elements of claim 20. Claim 1 is styled a "computer based method of reconciling a transaction using at least one processor and at least one memory" (and then recites claim 20's elements). Claim 19 is styled a "non-transitory computer-readable medium having computer instructions stored thereon, which, when executed by a processor, causes the processor to perform one or more operations comprising" (and then recites claim 20's elements).[15] Dependent claims 2 through 18 recite common elements: the type of accounts (such as user or gaming accounts), where to transfer points, the type of currency, types of object attributes (such as time, price, or physical location), concepts about reconciliation, concepts about transaction attributes, and types of entities.[16]

---

[14] '477 Patent – ECF No. 1-2 at 29 (34:1-25) (claim 20).

[15] *Id.* at 28 (31:38–63) (claim 1) & 29 (33:3–28) (claim 19). In its motion, Niantic points out that the independent claims repeat the elements of claim 20 or do not add elements that alter it. Mot. at 12. NantWorks did not dispute this characterization in its opposition.

[16] '477 Patent – ECF No. 1-2 at 28–29 (cols. 31–33) (claims 2 through 18). In its motion, Niantic points out that the dependent claims recite common elements that do not transform the concepts to which the claims are directed. Mot. – ECF No. 23 at 12–13 (discussing dependent claims 2 through 18 and reciting the common elements). NantWorks did not dispute this characterization of the claims.

United States District Court
Northern District of California

NantWorks filed the lawsuit on September 3, 2020, served Niantic on September 8, 2020, and filed the FAC on October 6, 2020.[17] Niantic moved to dismiss the complaint, and the court held a hearing on December 16, 2020. All parties consented to magistrate-judge jurisdiction.[18]

## LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (cleaned up).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up) (quoting *Twombly*, 550 U.S. at 557).

Patent eligibility can be determined at the Rule 12(b)(6) stage "when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1384 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 813 (2019).

---

[17] Compl. – ECF No. 1; Proof of Service – ECF No. 1; FAC – ECF No. 20.

[18] Consents – ECF Nos. 13 and 19.

If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1182 (9th Cir. 2016) (cleaned up).

**ANALYSIS**

Niantic moves to dismiss (1) claim two because the '477 patent does not recite any patent-eligible invention and thus is invalid under 35 U.S.C. § 101, and (2) the claims of willful infringement and pre-suit induced infringement because NantWorks did not allege that Niantic had pre-suit notice of the patents-in-suit or acted willfully. The court grants the motion.

**1. Invalidity under 35 U.S.C. § 101**

Under § 101, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor[.]" 35 U.S.C. § 101. The "laws of nature, physical phenomena, and abstract ideas" are "specific exceptions to § 101's broad patent-eligibility principles." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010) (citation omitted).

The Supreme Court's two-step test governs the § 101 inquiry. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). At step one, the court determines "whether the claims at issue are directed to one of those patent-ineligible concepts," which here — Niantic contends — is an abstract idea. *Id.* If the claims are directed to an abstract idea, then at step two, the court "considers the elements of each claim individually and as an ordered combination to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application." *Id.* Step two is a "search for an 'inventive concept,'" meaning, "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (cleaned up).

The court grants Niantic's motion. The patent's claims are directed at an abstract idea, and there is no inventive concept that transforms the claims into a patent-eligible application.

**1.1 Step One: Abstract Idea**

Niantic contends that the claims of the ’477 patent are directed to the abstract idea of reconciling transactions (such as payments or an exchange of gaming points) based on a user’s location and on generic computer technologies.[19]

“The Supreme Court has not established a definitive rule to determine what constitutes an ‘abstract idea’’ sufficient to satisfy the first step of the *Mayo/Alice* inquiry.” *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1324 (Fed. Cir. 2016). Courts “have approached the Step 1 ‘directed to’ inquiry by asking what the patent asserts to be the focus of the claimed advance over the prior art,” focusing “on the language of the Asserted Claims themselves . . . considered in light of the specification.” *TecSec, Inc. v. Adobe Inc.* 878 F.3d 1278, 1292 (Fed. Cir. 2020) (citations omitted) (cleaned up). Courts also consider whether the claims are directed to a fundamental economic practice. *Alice,* 571 U.S. at 220–21.

In cases involving software innovations, the inquiry often turns on whether the claims focus on “specific asserted improvements in computer capabilities or instead on a process or system that qualifies an abstract idea for which computers are invoked merely as a tool.” *TecSec*, 878 F.3d at 1193. For example, if a process can be performed in other ways — mentally, or by putting pen to paper — it is an abstract idea. *Synopsis, Inc. v. Mentor Graphics, Inc.*, 839 F.3d 1138, 1147 (Fed Cir. 2016). Conversely, if the claims provide a specific technical solution — such as, in *Data Engine Technologies*, a specific method for navigating three-dimensional spreadsheets and the resulting improvement in functionality from prior art — then the claims are not abstract ideas and are patent eligible. *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 102, 1007–08 (Fed. Cir. 2018).

No case addresses whether reconciling payment transactions based on a user’s location is an abstract idea. Niantic’s main argument is that reconciling payments is like other automated notification systems that — courts have held — are abstract ideas. For example, in *Electronic Communications Technologies*, the Federal Circuit held that an automated-notification system —

[19] Mot. – ECF No. 23 at 15 (citing ’477 Patent – ECF No. 1-2 at 29 (34:1–25) (claim 20)).

advance notice to customers about the pickup or delivery of goods — was an abstract idea. *Elec. Comm'n Techs. v. ShoppersChoice.com*, 958 F.3d 1179, 1180–82 (Fed. Cir. 2020). The claim

> (1) enables a first party to input authentication information; (2) stores the authentication information; (3) monitors the location of a mobile thing; (4) initiates notification to the first party in advance of arrival of the mobile thing; (5) provides the authentication information to the first party; and (6) enables the party to select whether or not to communicate with a second party having access to the particulars of the pickup or delivery.

*Id.* at 1181. Two of the six functions — monitoring the package's location and notifying the customer in advance of delivery — were fundamental business practices that had existed for decades. *Id.* The measures to increase security — authentication information such a phone number or partial credit card — were abstract because they were "longstanding commercial practice" and were "nothing more than gathering, storing, and transmitting information." *Id.* at 1182.

In reaching its conclusion, the Federal Circuit cited cases involving claims that were abstract ideas at step one because they were directed to longstanding commercial practices, first citing *Alice* and *Bilski* and then its own cases. *Id.* (collecting cases and citing *Alice*, 573 U.S. at 219–20, and *Bilski*, 561 U.S. at 611).[20] In *Alice*, for example, the claimed invention involved a computer platform that mitigated risk in financial settlements. It was an abstract idea because risk mitigation is a longstanding "fundamental economic practice." *Alice*, 573 U.S. at 219–20. In *Bilski*, "the basic concept of hedging" was an abstract idea because hedging is "a fundamental economic practice long prevalent in our system of commerce." 561 U.S. at 611 (cleaned up).

Federal Circuit cases that address pricing or contractual relationships further illustrate when claims are directed to abstract ideas. In *Versata*, for example, the claims were directed to a method to determine the price of products by using organizational and product-group hierarchies, which was an abstract idea based on ideas known to the industry and capable of being performed by a computer. *Versata Dev. Grp. v. SAP Am.*, 793 F.3d 1306, 1311–13, 1333–34 (Fed. Cir. 2015). In *OIP Technologies*, a computer program had an automated pricing mechanism that helped online vendors make better pricing decisions through "conventional activities" (either computer activities

[20] Niantic cites the same cases and many more. *See, e.g.*, *id.* at 15–16.

or routine gathering of data). The claim for price optimization was an abstract idea because it was a "fundamental economic concept" of "offer based price optimization." *OIP Techs. v. Amazon.com*, 788 F.3d 1359, 1362 (Fed. Cir. 2015) (cleaned up) (collecting cases). In *buySAFE*, the computer platform encoded steps for guaranteeing a party's performance of its online transaction. The claims were abstract ideas about creating and guaranteeing a contractual relationship. *buySAFE v. Google*, 765 F.3d 1350, 1354–55 (Fed. Cir. 2014). The cases illustrate the point that — without more — collecting and analyzing information is the equivalent of a mental process and thus is abstract. *Elec. Power Grp. LLC v. Alstom S.A*, 830 F.3d 1350, 1353–54 (Fed. Cir. 2016) (collecting cases).

The '477 patent is directed to reconciling transactions between two users based on the first user's location. Certainly, reconciling transactions between two users (for example, a customer buying something from a merchant) is a fundamental and longstanding economic practice, and an abstract idea. The question is whether "location" — as part of that reconciliation — removes claim 20 from the realm of abstract ideas. Niantic points out that location is part of longstanding commercial and gaming practices. Cab fares, for example, are based on location and the distance traveled. In basketball, a player's location — inside or outside of the three-point line — determines the points awarded for a field goal.[21]

Courts have held that a transaction based on location is an abstract idea. For example, a delivery company must track a package's location, whether by a computer or otherwise. Like the intermediated settlement at issue in *Alice*, it is a fundamental and longstanding business practice. *Elec. Comm'n Techs.*, 958 F.3d at 1181–82; *see Alice*, 573 U.S. at 219–20. Similarly, tailoring content based on a user's location — in the form of customized webpage content or different newspaper inserts — is an abstract idea. *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015). Providing map-related data based on a user's "status" (meaning, any information about location) is just analyzing information about a location, which is data analysis and an abstract idea. *Location Based Servs., LLC v. Niantic, Inc.*, 295 F. Supp. 3d

---

[21] *Id.* at 9.

United States District Court
Northern District of California

1031, 1045–49 (N.D. Cal. 2017), *aff'd*, 742 F. App'x 506 (Fed. Cir. 2018). Sharing a user's location through the user's mobile device similarly is an abstract idea, "one that can be carried out using a pen and paper." *Silver State Intellectual Techs. v. Facebook Inc.*, 314 F. Supp. 1041, 1047–48 (N.D. Cal. 2018). These cases support the conclusion that claim 20 is directed at an abstract idea: reconciling transactions based on a user's location and generic computer technologies.

NantWorks counters that Niantic characterizes claim 20 at a too-high level of abstraction and that the claim — like the claim in *Data Engine Technologies* — improves computer functionalities.[22] *Data Engine Techs.*, 906 F.3d at 1007–08; *see TecSec*, 878 F.3d at 1193 (improvements to a data network solved a particular problem and were patentable subject matter; cautioned against "overgeneralizing claims in the § 101 analysis" because "characterizing the claims at a high level of abstraction all but ensures that the exceptions to § 101 swallow the rule") (citations omitted) (cleaned up).

To support its contention, NantWorks points to the '477 patent specification's identification of the problems with the prior art — which allowed only single-user to single-provider payments (essentially, requiring a centralized trader as an intermediary) — and its solution in the form of reconciliation of multiparty transactions.[23] Citing columns 18 to 23 of the specification, it says that the specification "provides detailed instructions for solving that problem in the form of a technological improvement."[24] It next says, "[t]hose instructions include how to determine the nature of the data to be sent (the number of game points based on the first player's location), how to send the data (as part of a single transaction), and when to send the data (when specific location criteria are met)." *See, e.g.* ' 477 Patent 34:10–17. Nothing more is required for patent eligibility."[25] Citing only the complaint and not the patent, NantWorks then argues the following:

---

[22] Opp'n – ECF No. 25 at 13–18.

[23] *Id.* at 15 (citing '477 Patent, Ex. B to Compl – ECF No. 1-2 at 13 (1:37–43); *see supra* Statement (excerpting the specification).

[24] Opp'n – ECF No. 25 at 15 (citing '477 Patent, Ex. B to Compl – ECF No. 1-2 at 21–24 (18:32–23:3)).

[25] *Id.*

> As taught in the specification, the '477 Patent claims change how the computer itself functions and to which external computers it communicates." Prior systems provide a single provider the ability to conduct a transaction with a single user and lack the ability to offer consumers a system that can reconcile aspects of a transaction among multiple user accounts. To provide faster and more efficient transaction reconciliation, the '477 Patent claims allow coordinated multiparty data transfers in the form of game points based on a single player's physical location linked to an object attribute.[26]

That is the sum of NantWorks's argument. It does not discuss any claim language or any part of the specification addressing "specific asserted improvements in computer capabilities." *TecSec*, 878 F.3d at 1193. It cites (without discussing any facts in) columns 18 to 23 in the specification. Those columns describe use cases — magazine subscriptions, downloading digital files, cable subscriptions, patient care, preordering products and services, charitable donations, gamifications (meaning points, badges, and the like), tolls, and rights management — and the reconciliation of transactions.[27] NantWorks then cites claim 20 (excerpted fully in the Statement), but like the specification, claim 20 does not assert specific improvements in computer capabilities. Only the complaint alleges improvements, but that does not alter the conclusion that the patent itself recites nothing beyond generic computer technology coupled with location information.

NantWorks nonetheless contends that fact issues — based on the reconciliation step in claim 20 — preclude dismissal.[28] The specific language discussed at the hearing was the following: "determine transaction amounts of game points for a first account of the first player and a second account of a second player, the transaction amounts being determined based on a reconciliation matrix and the at least one object attribute based on the physical location data."[29] (The highlighted part is what allegedly creates the fact dispute.) The court does not see how this is anything other than reconciling a transaction based on a user's location or how determining it within a computer game makes any difference (given the cases that hold that reconciling transactions based on a user's location and generic computer technologies is an abstract idea).

---

[26] *Id.* (citing FAC – ECF No. 20 at 12–13 (¶¶ 36–38)).

[27] '477 Patent, Ex. B to Compl – ECF No. 1-2 at 21–24 (18:32–23:3).

[28] Opp'n – ECF No. 25 at 14, 20.

[29] '477 Patent – ECF No. 1-2 at 29 (34:10-14) (claim 20).

United States District Court
Northern District of California

In sum, claim 20 does not focus on specific asserted improvements in computer technology. The claim is an abstract idea.

**1.2 Step Two: Inventive Concept**

NantWorks contends that the prior art allowed only user-to-provider options (like Apple EasyPay). But, it says, with location data linking the players in the "transaction," the players can pay game points in parallel, making the gaming experience faster and more efficient. "[T]his particular arrangement of the claimed components . . . creates something different from what came before."[30] The problem is, where in the claims is this recited? At step two, "an inventive concept must be evident in the claims." *RecogniCorp, LLC v. Nintendo Co., Ltd*, 855 F.3d 1322, 1327 (Fed. Cir. 2017).

Claim 20 describes only conventional and generic computer components applied to the abstract idea of reconciling transactions based on user location. There is no inventive concept transforming the claim into a patent-eligible application of an abstract idea. *BSG Tech. LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290–91 (Fed. Cir. 2018). NantWorks analogizes its claimed inventive concept to the device in *Cellspin*. The prior art in *Cellspin* involved a "a capture device with built-in mobile wireless Internet," which was inferior to the "unconventional" solution of capturing and publishing data in two separate steps through two different devices. *Cellspin Soft, Inc. v. Fitbit, Inc.* 927 F.3d 1306, 1316 (Fed. Cir. 2019). Similarly, in *BASCOM* (another case cited by NantWorks), a software tool that filtered content was inventive because it was a practical application of the abstract idea. *BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016). The '477 patent's claims and specifications do not recite any similarly inventive concept. The court understands that NantWorks' argument is that — based on the claim 20 excerpt in the previous section — there is at least a fact dispute about whether there is an inventive concept of a reconciliation step when a criterion (based on a player's physical location) is met within the game.[31] But that concept does not approximate the inventive concept of

[30] Opp'n – ECF No. 25 at 19.

[31] *Id.* at 20.

United States District Court
Northern District of California

*Cellspin*'s unconventional solution or *BASCOM*'s filtering of content.

**2. Pre-Suit Notice**

Niantic also moved to dismiss the claims for willful and pre-suit indirect infringement on the ground that NantWorks did not allege facts that Niantic had pre-suit knowledge of the patents-in-suit or acted willfully. The court grants the motion.

A plaintiff must plausibly allege a defendant's pre-suit knowledge of the patents in suit to support a claim of induced infringement. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011); *Monolithic Power Sys., Inc. v. Silergy Corp.*, 127 F. Supp. 3d 1071, 1077 (N.D. Cal. 2015). Also, "[k]nowledge of the patents alleged to be willfully infringed continues to be a prerequisite to enhanced damages." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) (citing *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932–33 (2016)).

The complaint says nothing about pre-suit notice. It does allege that in 2014, Niantic hired several former employees of a NantWorks-related company, including Jim Stewartson and Elan Lee, and that Niantic released the infringing games between 2016 and 2019.[32] The '051 and '477 patents claim priority to April 8, 2011 and November 21, 2011, respectively, and the '518 patent claims priority to October 17, 2013.[33] NantWorks contends that the allegations and the timeline "give[] rise to a plausible inference that Niantic was aware of NantWorks' technology" and "despite that knowledge . . . chose to infringe them anyway."[34] This is speculation and does not plausibly plead pre-suit notice. *Radware, Ltd. v. A10 Networks, Inc.*, Case No. C–13–02021–RMW, 2013 WL 5272295, at *3 (N.D. Cal. Sept. 24, 2013) (similar speculation did not plausibly plead pre-suit notice).

---

[32] FAC – ECF No. 20 at 21–22 (¶¶ 58, 60–63).

[33] U.S. Patent No. 10,403,051 (filed Nov. 9, 2018), Ex. A to Compl. – ECF No. 1-1; U.S. Patent No. 10,614,477 (filed May 24, 2019), Ex. B to Compl. – ECF No. 1-2; U.S. Patent No. 10,664,518 (filed Oct. 23, 2018), Ex. C to Compl. – ECF No. 1-3.

[34] Opp'n – ECF No. 25 at 22.

United States District Court
Northern District of California

NantWorks also did not plead any facts — pre-suit or post-suit — about the egregious conduct that is necessary to support a claim of willful infringement and enhanced damages. *Halo*, 136 S. Ct. at 1935.

The court dismisses the pre-suit induced infringement claims and the willfulness claims.

## CONCLUSION

The court grants the motion to dismiss with prejudice as to the § 101 challenge and without prejudice otherwise. NantWorks must file any amended complaint within 30 days.

**IT IS SO ORDERED.**

Dated: January 4, 2021

LAUREL BEELER
United States Magistrate Judge