1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

NANTWORKS, LLC, et al.,

　　　　　Plaintiffs,

　　v.

NIANTIC, INC.,

　　　　　Defendant.

Case No. 20-cv-06262-LB

**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS**

Re: ECF No. 140

## INTRODUCTION

NantWorks sued Niantic for infringing NantWorks' patents in Niantic's augmented-reality (AR) game apps Pokémon Go and Harry Potter: Wizards Unite. Both games use the camera and GPS system on a mobile device and an AR platform to superimpose AR objects onto digital representations of a mobile device's actual surroundings. For example, the game app Pokémon Go sends users on scavenger hunts to collect virtual objects (such as Pokémon characters), which are represented on the mobile device as if they are in the player's real-world location.

U.S. Patent No. 10,664,518 (the '518 patent) is directed to the mapping of AR objects and their appearance on a device's display. Niantic moved for judgment on the pleadings on the ground that the '518 claims are directed to an abstract idea — providing information based on a location on a map — and lack an inventive concept. The claims are not patent-eligible subject matter under § 101. The court grants the motion.

United States District Court
Northern District of California

**STATEMENT**

The '518 patent (titled "Wide Area Augmented Reality Location-Based Services") was filed in 2018, issued in 2020, and claims priority to October 27, 2013.[1] It is directed to mapping AR objects and displaying them on a device.[2]

Existing AR systems used location data to deliver content to a device.[3] But they "fail to consider that areas have various views of interest, and fail to differentiate between sub-areas based on AR content densities," and they "fail to contemplate segmenting an area into clusters based on what is viewable or what AR content is available."[4]

The '518 patent allegedly provides solutions to the technical problem of providing AR content to mobile devices.[5] It describes a method of generating a map, associating AR objects with locations based on dividing the map into tiles, and determining the placement of the virtual object within a scene displayed on a device. It determines where the virtual object appears on the map (including determining which local scene is displayed).[6]

NantWorks' remaining asserted claims are 7, 14, 16, 19, 26, and 31. Niantic addresses these and also the claims they depend from: 1, 13, 15, 18, and 30.[7]

Claim 1 of the '518 patent recites the following:

> 1. A device capable of rendering [AR], the device comprising:
>
>    at least one sensor, including a location sensor;
>
>    a display;
>
>    a non-transitory computer readable memory storing software instructions; and

---

[1] U.S. Patent No. 10,664,518 (filed Oct. 23, 2018) – ECF No. 114-3. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] '518 Patent – ECF No. 114-3 at 2 (at [57]).

[3] *Id.* at 11 (col. 1 ll. 26–31, 47–55).

[4] *Id.* (col. 2 ll. 3–8).

[5] Third Am. Compl. – ECF No. 50 at 15–16 (¶¶ 41–44).

[6] '518 Patent – ECF No. 114-3 at 12 (col. 3 ll. 54–61, col. 4 ll. 48–52, 63–67) & 18 (col. 16 ll. 42–52).

[7] Mot. – ECF No. 140 at 6 & n.2, 8–12; Opp'n – ECF No. 142 at 21–25.

at least one processor coupled with the non-transitory computer readable memory, the at least one sensor, and the display; and, upon execution of the software instructions, is configurable to:

obtain sensor data from the at least one sensor wherein the sensor data includes a device location obtained from the location sensor;

obtain an area of interest via an area database based on at least the device location within the sensor data;

access an area tile map of the area of interest, the area tile map represented by a set of tile subareas that includes one or more tessellated tiles from a tessellated tile map;

identify a tile subarea from the set of tile subareas based at least in part on the device location relative to one or more locations of tile subareas from the set of tile subareas, wherein the identified tile subarea covers at least a portion of the area of interest, and wherein one or more tessellated tiles within the identified tile subarea are associated with one or more AR content objects;

populate the non-transitory computer readable memory with at least one of the one or more AR content objects associated with the one or more tessellated tiles corresponding with the identified tile subarea; and

render the at least one of the one or more AR content objects that is associated with the identified tile subarea on the display based on a view of interest.[8]

The court's claim construction was as follows:[9]

| Claim Term | Construction |
|---|---|
| "tessellated tiles" | "tiles fitted together to cover an area without gaps" |
| "augmented reality"/"AR" | "the presentation of virtual objects in a scene alongside of real-world elements" |
| "AR content object" | "the virtual object that is to be presented to the user" |
| "area of interest" | "a real-world space, area, or setting" |
| "obtain[ing] an area of interest via an area database" | subject to the construction of "area of interest," plain and ordinary meaning |
| "an area tile map of the area of interest, the area tile map represented by a set of tile subareas that includes one or more tessellated tiles from a tessellated tile map" | "tessellated tiles" and "area of interest" already construed; "area tile map" construed as "a map of a real-world space, area, or setting divided into tile(s)" |
| "associated with" | plain and ordinary meaning |

---

[8] *Id.* at 23–24 (col. 26 ll. 40–67, col. 27 ll. 1–8).

[9] Order – ECF No. 135 at 2.

United States District Court
Northern District of California

The following chart has asserted claims 7, 14, 16, 19, 26, and 31 and claims 13, 15, 18, and 30.[10]

| Remaining Asserted Claims and Claims They Depend From |
|---|
| 7.  The device of claim 1, wherein the at least one of the one or more AR content objects is rendered on the display as an overlay of an image related to the real world. |
| 13.  The device of claim 1, wherein the at least one of the one or more content AR objects is obtained from an AR content database. |
| 14.  The device of claim 13, wherein the device is communicatively coupled with the AR content database over a network. |
| 15.  The device of claim 1, wherein the at least one of the one or more AR content objects is rendered relative to a recognized object. |
| 16.  The device of claim 15, wherein the recognized object represents an attachment point for the at least one of the one or more AR content objects. |
| 18.  The device of claim 1, wherein the at least one of the one or more AR content objects comprises a game object. |
| 19: The device of claim 18, wherein the at least one of the one or more AR content objects comprises an interactive game experience. |
| 26.  The device of claim 1, wherein the identified tile subarea or the at least one of the one or more AR content objects is identified based on time. |
| 30. The device of claim 1, wherein a virtual item is provided to a first user and a second user when the first user and the second user execute a navigation event with respect to the area of interest or the identified tile subarea. |
| 31. The device of claim 30, wherein the navigation event comprises the first user and the second user each performing at least one of the following: being located in the area of interest at any time, being located in the area of interest for a predetermined minimum amount of time, being located in the area of interest at a predetermined time, or being located in the area of interest and capturing an image viewable from the area of interest.[11] |

The court held a hearing on December 22, 2022. All parties consented to magistrate-judge jurisdiction.[12]

## STANDARD OF REVIEW

"After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "[T]he same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog," because the motions are "functionally identical." *Dworkin v. Hustler Mag., Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). A Rule 12(c)

---

[10] *See supra* (discussing asserted claims and the underlying claims they depend from).

[11] '518 Patent – ECF No. 114-3 at 24 (claim 7: col. 27 ll. 30–31; claims 13–16: col. 27 ll. 47–58; claims 18–19: col. 27 ll. 63–67; claim 26: col. 28 ll. 28–30; claims 30–31: col. 28 ll. 47–58).

[12] Consents – ECF Nos. 13 & 19.

1    motion may thus be predicated on either (1) the lack of a cognizable legal theory or (2) insufficient

2    facts to support a cognizable legal claim. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696,

3    699 (9th Cir. 1988). When considering a motion to dismiss under Rule 12(c), the court "must

4    accept all factual allegations in the complaint as true and construe them in the light most favorable

5    to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). "A judgment on

6    the pleadings is proper if, taking all of [the plaintiff]'s allegations in its pleadings as true, [the

7    defendant] is entitled to judgment as a matter of law." *Compton Unified Sch. Dist. v. Addison*, 598

8    F.3d 1181, 1185 (9th Cir. 2010) (Smith, J., dissenting) (citing *Westlands Water Dist. v. Firebaugh*

9    *Canal*, 10 F.3d 667, 670 (9th Cir. 1993)).

10        "Patent eligibility under § 101 is a question of law that may involve underlying questions of

11   fact." *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379 (Fed. Cir. 2019). "Patent eligibility may

12   be determined on a Rule 12(c) motion, but only when there are no factual allegations that, if taken

13   as true, prevent resolving the eligibility question as a matter of law." *Id.*

14

15                                          **ANALYSIS**

16        Under 35 U.S.C. § 101, "[w]hoever invents or discovers any new and useful process, machine,

17   manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a

18   patent therefor." The "laws of nature, physical phenomena, and abstract ideas" are "specific

19   exceptions to § 101's broad patent-eligibility principles." *Bilski v. Kappos*, 561 U.S. 593, 601

20   (2010) (citation omitted).

21        The Supreme Court's two-step test governs the § 101 inquiry. *Alice Corp. Pty. v. CLS Bank*

22   *Int'l*, 573 U.S. 208, 217 (2014). At step one, the court determines "whether the claims at issue are

23   directed to one of [the] patent-ineligible concepts," such as abstract ideas. *Id.* If the claims are

24   directed to an abstract idea, then at step two, the court "considers the elements of each claim

25   individually and as an ordered combination to determine whether the additional elements

26   'transform the nature of the claim' into a patent eligible application." *Id.* Step two is a "search for

27   an 'inventive concept,'" meaning, "an element or combination of elements that is sufficient to

28

1  ensure that the patent in practice amounts to significantly more than a patent upon the ineligible

2  concept itself." *Id.* (cleaned up).

3

4  **1.  Step One: Abstract Idea**

5      Niantic contends that the asserted claims are directed to the abstract idea of "providing

6  information based on a location on a map," implemented only on generic computer components.[13]

7  NantWorks counters that the claims are directed to a specific technical improvement to prior AR

8  technology and the running of the device by allowing for more precise placement of AR content as

9  a user enters an area. By following the user and loading AR content by area (as opposed requiring

10  the download of all AR content "a priori"), the claims avoid overwhelming the memory and

11  computing capabilities, resulting in a more seamless AR experience.[14] The weight of authority

12  supports the conclusion that the asserted claims are directed to the abstract idea of providing

13  information based on a location on a map.

14      "The Supreme Court has not established a definitive rule to determine what constitutes an

15  'abstract idea' sufficient to satisfy the first step of the *Mayo/Alice* inquiry." *Enfish, LLC v. Microsoft*

16  *Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). Courts "have approached the Step 1 'directed to'

17  inquiry by asking what the patent asserts to be the focus of the claimed advance over the prior art,"

18  focusing "on the language of the [a]sserted [c]laims themselves . . . considered in light of the

19  specification." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292–93 (Fed. Cir. 2020) (cautioned

20  against "overgeneralizing claims in the § 101 analysis" because "characterizing the claims at a high

21  level of abstraction all but ensures that the exceptions to § 101 swallow the rule") (cleaned up).

22      In cases involving software innovations, the inquiry often turns on whether the claims focus on

23  "specific asserted improvements in computer capabilities or instead on a process or system that

24  qualifies [as] an abstract idea for which computers are invoked merely as a tool." *TecSec*, 978 F.3d at

25  1293. For example, if a process can be performed in other ways — mentally, or by putting pen to

26

27  [13] Mot. – ECF No. 140 at 8–20.

28  [14] Opp'n – ECF No. 142 at 12–13.

paper — it is an abstract idea. *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1147 (Fed Cir. 2016). Conversely, if the claims provide a specific technical solution — such as, in *Data Engine Technologies*, a specific method for navigating three-dimensional spreadsheets and the resulting improvement in functionality from prior art — then the claims are not abstract ideas and are patent eligible. *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1002, 1007–08 (Fed. Cir. 2018).

Niantic illustrates its contention that the asserted claims are directed to the abstract idea of "providing information based on a location on a map" by analyzing asserted claim 7, which depends from claim 1. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (it is enough to analyze a representative claim under § 101 where the claims are substantially similar and linked to the same abstract idea). Niantic provides the following summary:

| Claim | Abstract Step |
|---|---|
| 1. A device capable of rendering [AR], the device comprising:<br><br>at least one sensor, including a location sensor;<br><br>a display;<br><br>a non-transitory computer readable memory storing software instructions; and<br><br>at least one processor coupled with the non-transitory computer readable memory, the at least one sensor, and the display; and, upon execution of the software instructions, is configurable to:<br><br>obtain sensor data from the at least one sensor wherein the sensor data includes a device location obtained from the location sensor; | Get location information |
| obtain an area of interest via an area database based on at least the device location within the sensor data;<br><br>access an area tile map of the area of interest, the area tile map represented by a set of tile subareas that includes one or more tessellated tiles from a tessellated tile map;<br><br>identify a tile subarea from the set of tile subareas based at least in part on the device location relative to one or more locations of tile subareas from the set of tile subareas, wherein the identified tile subarea covers at least a portion of the area of interest, and wherein one or more tessellated tiles within the identified tile subarea are associated with one or more AR content objects; | Determine relevant map area (tile(s)) |

| | |
|---|---|
| populate the non-transitory computer readable memory with at least one of the one or more AR content objects associated with the one or more tessellated tiles corresponding with the identified tile subarea; and | Get stickers for relevant map area (tile(s)) |
| render the at least one of the one or more AR content objects that is associated with the identified tile subarea on the display based on a view of interest. <br> 7.  The device of claim 1, wherein the at least one of the one or more AR content objects is rendered on the display as an overlay of an image related to the real world. | Put the stickers on the map |

Thus, Niantic asserts, the claimed concept is straightforward. The device (1) gets location information, (2) determines a relevant map area (*i.e.*, the map tiles), (3) gets content (*e.g.*, stickers) for the relevant map tiles, and (4) displays the content (*e.g.*, by placing the stickers on the map). This is the abstract idea of providing information to a user based on a location on a map.[15] (The remaining asserted claims are linked to this abstract idea: (1) claims 13 and 14 because they recite networking details; (2) claims 15, 16, 30, and 31 because they recite types of location determination; (3) claims 18 and 19 (game-related information); and (4) claim 26 (insignificant time-based conditions, *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015).[16])

NantWorks describes the patent's steps somewhat similarly: (1) the subarea is selected based on the area of interest and the user device; (2) the AR content is selected based on association with the tile subarea; and (3) the AR content is displayed in the view of interest.[17] But NantWorks characterizes the object of these steps not as mapping but as placing the correct virtual objects in the correct location of an AR experience. The object is the improvement of the relevant technology: AR content management and the functioning of the computing device or network.[18]

In an earlier order, the court held that a different NantWorks patent — U.S. Patent No. 10,614,477 — was directed to the abstract idea of reconciling transactions (such as payments or an

---

[15] Mot. – ECF No. 140 at 9–10.

[16] *Id.* at 12, 17–18.

[17] Opp'n – ECF No. 142 at 16.

[18] *Id.* at 8, 14, 16; *see also* Third Am. Compl. – ECF No. 50 at 15 (¶ 42) ("[T]he disclosed invention identifies a location of a device . . . and auto-populates the device with pre-selected content objects based upon the identified location.").

United States District Court
Northern District of California

1  exchange of gaming points) between two users based on the first user's location and on generic

2  computer technologies.[19] In invalidating the '477 patent's claims, the court summarized cases

3  holding that a transaction based on location is an abstract idea:

> Courts have held that a transaction based on location is an abstract idea. For example,
> a delivery company must track a package's location, whether by a computer or
> otherwise. Like the intermediated settlement at issue in *Alice*, it is a fundamental and
> longstanding business practice. [*Elec. Comm'n Techs., LLC v. ShoppersChoice.com,
> LLC*, 958 F.3d 1178, 1181–82 (Fed. Cir. 2020)]; *see Alice*, 573 U.S. at 219–20.
> Similarly, tailoring content based on a user's location — in the form of customized
> webpage content or different newspaper inserts — is an abstract idea. [*Intell. Ventures
> I v. Cap. One*, 792 F.3d at 1369]. Providing map-related data based on a user's
> "status" (meaning, any information about location) is just analyzing information about
> a location, which is data analysis and an abstract idea. *Location Based Servs., LLC v.
> Niantic, Inc.*, 295 F. Supp. 3d 1031, 1045–49 (N.D. Cal. 2017), *aff'd*, 742 F. App'x
> 506 (Fed. Cir. 2018). Sharing a user's location through the user's mobile device
> similarly is an abstract idea, "one that can be carried out using a pen and paper." *Silver
> State Intell. Techs. v. Facebook Inc.*, 314 F. Supp. 1041, 1047–48 (N.D. Cal. 2018).
> These cases support the conclusion that claim 20 is directed at an abstract idea:
> reconciling transactions based on a user's location and generic computer
> technologies.[20]

14  This analysis supports invalidating the claims in the '518 patent because providing information

15  based on a location on a map is an abstract idea.

16  Other Federal Circuit authority establishes that that the '518 claims are directed to an abstract

17  idea.

18  In *Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*, IBM sued Zillow for infringing a patent that

19  described a method for "coordinated geospatial, list-based[,] and filter-based selection." 50 F.4th

20  1371, 1374 (Fed. Cir. 2022). A user draws a shape on the map to select that area of the map, and

21  the claimed system filters and displays data limited to that area of the map and "synchronizes

22  which elements are shown as 'selected' on the map and its associated list." *Id.* at 1374–75. The

23  district court granted Zillow's motion for judgment on the pleadings, holding that the patent was

24  directed to the abstract idea of "responding to a user's selection of a portion of a displayed map by

25  simultaneously updating the map and a co-displayed list of items on the map." *Id.* at 1377. The

26

27  [19] Order – ECF No. 35 at 7, 9.

28  [20] *Id.* at 9–10.

United States District Court
Northern District of California

1    Federal Circuit affirmed, holding that the claims were directed to the abstract steps of "presenting

2    a map, having a user select a portion of that map, and then synchronizing the map and its

3    corresponding list to display a more limited data set to the user." *Id.* at 1377–78.

4        The patent in *Zillow* had the same steps as the '518 patent: (1) get location information, (2)

5    determine a relevant map area, (3) get stickers for the map area, and (4) put the stickers on the map.

6    Those steps are abstract. *Id.*; *see also Elec. Power Grp. LLC v. Alstom S.A.*, 830 F.3d 1350, 1353–

7    54 (Fed. Cir. 2016) (the focus of the asserted claims was collecting information, analyzing it, and

8    displaying it; "these claims focus on an abstract idea — and hence require stage-two analysis under

9    § 101") (collecting cases); *Intell. Ventures I LLC v. Cap. One*, 792 F.3d at 1369 ("tailoring content

10    based on the viewer's location" is an abstract idea).

11        Similarly, *Weisner v. Google LLC* involved claims directed to a mobile device and recording

12    the physical-location histories of members who visited vendors in a member network. 51 F.4th

13    1073, 1077 (Fed. Cir. 2022). The district court dismissed the case based on patent ineligibility,

14    holding that the patent claims were directed to "collecting information on a user's movements and

15    location history and electronically recording that data." *Id.* at 1082 (cleaned up). The Federal

16    Circuit affirmed, holding that the claims were directed to the abstract idea of creating a digital

17    travel log. *Id.* Like the claims in *Weisner*, the claims here are directed to collecting information on

18    a user's location and determining the relevant map area.

19        NantWorks' main argument is that the patent claims are directed to improving the prior AR

20    technology, not merely mapping objects. But it predicates its argument on the specification, not on

21    the claim language. *Synopsys*, 839 F.3d at 1149 (unclaimed details in the specification cannot confer

22    eligibility); *Ericsson v. TCL Commc'n Tech. Holdings*, 955 F.3d 1317, 1328 (Fed. Cir. 2020)

23    (cannot import details from the specification, if not claimed), *cert. denied*, 141 S. Ct. 2624 (2021).

24    The patentable improvement is not evident in the claims. The claims are generic and show only

25    problems related to location and map usage. And even if the specification is tied to the claims

26    (NantWorks characterizes the specification as explaining the claimed method[21]), the concepts

27

28    ―――――――――――――
    [21] Opp'n – ECF No. 142 at 13.

United States District Court
Northern District of California

(location, map area, content, displayed content) are generic still. *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016) ("[T]he prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the idea to a particular technological environment.") (cleaned up).

NantWorks' citation to *Blackbird Tech LLC v. Niantic, Inc.* does not change this analysis.[22] No. 17-cv-1810-RGA, 2018 WL 5630452, at *2 (D. Del. Oct. 31, 2018). The patent claims there were directed to technical steps of integrating images of real spaces into video images of virtual spaces. *Id.* The court held that Niantic oversimplified the claim. *Id.* That case preceded *Zillow* and *Weisner*, which both show the court's characterization of the claims to be appropriate.

NantWorks' argument here echoes its argument about the '477 patent: that Niantic oversimplified the claim and that the claim — like the claim in *Data Engine Technologies* — improves computer functionalities.[23] *Data Engine Techs.*, 906 F.3d at 1007–08; *see TecSec*, 978 F.3d at 1293 (improvements to a data network solved a particular problem and were patentable subject matter; cautioned against "overgeneralizing claims in the § 101 analysis" because "characterizing the claims at a high level of abstraction all but ensures that the exceptions to § 101 swallow the rule") (cleaned up). NantWorks said that the patent specification showed how to solve the problem in the form of a technological improvement (but it did not).[24] It did not discuss claim language.[25] The court concluded that NantWorks established only reconciling a transaction based on a user's location and did not establish specific asserted improvements in computer technology, primarily because the claims did not assert specific improvements in computer capabilities.[26]

That analysis applies here: the claims do not focus on specific improvements in computer technology. They instead are directed to the abstract idea of providing information based on a location on a map. A patent-eligible technical improvement requires solving an actual problem.

---

[22] *Id.* at 15.

[23] Order – ECF No. 24 at 10.

[24] *Id.*

[25] *Id.* at 11.

[26] *Id.* at 11–12.

United States District Court
Northern District of California

United States District Court
Northern District of California

*McRO*, 837 F.3d at 1314 (a claim directed to automating part of a 3D facial-expression animation method focused on a specific asserted improvement where the prior-art animator performed the task manually); *Data Engine Techs.*, 906 F.3d at 1007–08 (a claimed method was not abstract where it "provide[d] a specific solution to then-existing technological problems in . . . prior art electronic spreadsheets," and those pre-existing problems — that users of three-dimensional spreadsheets had to "master many complex and arbitrary operations" — were taught by the specification); *cf. Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1347 (Fed. Cir. 2018) (rejecting an asserted improvement where "Interval Licensing [did] not allege that computer display devices were previously unable to display information from more than one source"). Mere novelty, by contrast, is not enough. *See, e.g.*, *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018).

In sum, the asserted claims do not focus on asserted improvements in computer technology and instead are directed to an abstract idea.

## 2.  Step Two: Inventive Concept

An inventive concept must be evident in the claims. *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017). The claims here describe only generic computer components applied to the abstract idea of providing information based on a location on a map, not an inventive concept.

For a software patent, the step-two analysis of whether the asserted claims are "more than well-understood, routine, or conventional" overlaps with the step-one analysis of whether the claims focus on a specific asserted technical advance or improvement. *Elec. Power Grp.*, 830 F.3d at 1353 (Federal Circuit decisions "make clear that the two [*Alice*] stages involve overlapping scrutiny of the content of the claims"); *Enfish*, 822 F.3d at 1339 (the "analysis of whether there are arguably concrete improvements in the recited computer technology could take place under" step one in some cases and step two in others).

NantWorks' main argument is again that it claims improvement of the AR technology. As discussed in the previous section, there are no specific improvements in computer technology.

United States District Court
Northern District of California

1    NantWorks' factual allegations — which establish only novelty — do not change the result.[27]

2    At the second step of the *Alice* test, factual allegations can preclude resolution of patent eligibility

3    at the Rule 12(c) stage. *Interval Licensing*, 896 F.3d at 1342 n.4. But Federal Circuit decisions

4    "are clear that a patent claim is not eligible under § 101 merely because it recites novel subject

5    matter." *cxLoyalty, Inc. v. Maritz Holdings Inc.*, 986 F.3d 1367, 1379–80 (Fed. Cir. 2021).

6

7                                   **CONCLUSION**

8        The court grants Niantic's motion for judgment on the pleadings on the ground that the

9    asserted claims in the '518 patent are invalid under 35 U.S.C. § 101.

10       This resolves ECF No. 140.

11       **IT IS SO ORDERED.**

12       Dated: January 13, 2023

         _____
13                                          LAUREL BEELER
                                            United States Magistrate Judge
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   [27] Third Am. Compl. – ECF No. 50 at 15–16 (¶¶ 41–44).