UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| NANTWORKS, LLC, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>NIANTIC, INC.,<br><br>　　　　Defendant. | Case No. 20-cv-06262-LB<br><br>**ORDER GRANTING MOTION TO STRIKE IN PART**<br><br>Re: ECF No. 228 |

### INTRODUCTION AND STATEMENT

NantWorks sued Niantic for infringing NantWorks' three patents in Niantic's augmented-reality (AR) game apps Pokémon Go and Harry Potter: Wizards Unite. Both games use the camera and GPS system on a mobile device and an AR platform to superimpose AR objects onto digital representations of a mobile device's actual surroundings. For example, the game app Pokémon Go sends users on scavenger hunts to collect virtual objects (such as Pokémon characters), which are represented on the mobile device as if they are in the player's real-world location.[1] There is now one patent remaining in the case: US Patent No. 10,403,051 (the '051 patent).[2]

---

[1] Third Am. Compl. – ECF No. 50. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Orders – ECF Nos. 35, 149.

ORDER – No. 20-cv-06262-LB

Following expert disclosures, Niantic moves to strike certain infringement theories in the opening expert report of Matthew Turk. Niantic contends that these theories were not disclosed in NantWorks' infringement contentions.[3] The court grants the motion in part.

## ANALYSIS

After the initial case-management conference, any party claiming patent infringement must serve its infringement contentions containing "[a] chart identifying specifically where and how each limitation of each asserted claim is found within each [accused apparatus, product, device, process, method, act, or other instrumentality]." N.D. Cal. Patent L.R. 3-1(c). Such parties are then expected "to proceed with diligence in amending those contentions when new information comes to light in the course of discovery." *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 236 F. Supp. 3d 1110, 1112 (N.D. Cal. 2017). "[A] party may not use an expert report to introduce new infringement theories [or] new infringing instrumentalities" that were not disclosed in its infringement contentions. *Huawei Techs. Co. v. Samsung Elecs. Co.*, 340 F. Supp. 3d 934, 946 (N.D. Cal. 2018) (cleaned up). "In determining whether to strike some or all of an expert report for failure to comply with the patent local rules, courts in this district have asked" whether doing so would make the litigation "more fair." *Id.* (cleaned up).

Niantic's motion focuses on NantWorks' infringement theories related to Pokémon Go's allegedly infringing the '051 patent. The '051 patent is directed to incorporating virtual objects into a digital representation of an actual scene surrounding a device (such as a mobile phone). The first issue is whether paragraphs 134 through 149 of the Turk Report should be stricken on the ground that they introduce new infringement theories related to claim 1 of the '051 patent. Claim 1 requires "determin[ing] whether to alter presence of a relevant AR object based on at least the device location and the virtual element attribute."[4] (NantWorks' infringement contentions, served

---

[3] Mot. – ECF No. 228.

[4] U.S. Patent No. 10,403,051 (filed Nov. 9, 2018) – ECF No. 114-2.

1    on January 28, 2021, asserted that Pokémon Go infringes claim 1 and claims depending from
2    claim 1.[5])
3        Niantic contends that the infringement contentions identified only the "Map View"
4    functionality in Pokémon Go ("in which the user's avatar, Pokémon, and other elements are
5    shown on top of an aerial view of a world map") and accused only two functionalities of Map
6    View: (1) Pokémon types appearing more or less frequently on the aerial view "based on real-
7    world weather at a user's real-world location," and (2) Pokémon near the user's location on the
8    aerial view appearing "large and in color" and Pokémon further from the user's location appearing
9    as "small shadowy icons at the bottom of the screen."[6] By contrast, the Turk Report (in its
10   paragraphs 134–49) relies not on Map View but "on the distinct 'Encounters' functionality of
11   Pokémon Go" to argue that the "determin[ing] whether to alter presence" limitation is infringed.
12   "Unlike the aerial, high-level Map View, Pokémon Go's 'Encounters' functionality allows a user
13   to view a Pokémon up close through a smartphone's camera." The Turk Report relies on
14   Encounters-specific functionality, such as a Pokémon jumping out of a bush at a set distance from
15   the user.[7]
16       NantWorks counters that even if its infringement contentions cited Map View as an example,
17   the contentions disclosed a broader feature that applies to either Map View or Encounters:
18   "changing the size and visibility of the Pokémon AR objects based on the user location." Thus, the
19   Turk Report merely elaborates on the contentions with information obtained during discovery.[8]
20       The infringement contentions were sufficiently broad to encompass both game modes. For
21   instance, the contentions said:

>   The Pokémon Go game permits users to interact with Pokémon AR objects based
>   on mobile phone/tablet computer location and the attributes of specific AR
>   object(s). For example, the Pokémon Go game determines whether the user is given
>   an opportunity to catch a Pokémon based on the device's real-world location and
>   the in-game location of the Pokémon AR object. The user's movement relative to

---

[5] Infringement Contentions – ECF No. 228-4 at 3.

[6] Mot. – ECF No. 228 at 9–10 (citing Infringement Contentions – ECF No. 228-4 at 17–19).

[7] *Id.* at 10–11 (citing Turk Report – ECF No. 227-2 at 55–64 (¶¶ 134–49) (under seal)).

[8] Opp'n – ECF No. 231 at 7–17.

the Pokémon AR object determines whether the Pokémon AR object is displayed at all and, if close enough, how that Pokémon AR object is displayed on the Map View.[9]

This excerpt describes the Map View as a specific example of a broader contention. The broader contention — that Pokémon Go satisfies the "determin[ing] whether to alter presence" limitation by enabling "users to interact with Pokémon AR objects based on mobile phone/tablet computer location and the attributes of specific AR object(s)" — amounted to fair notice with respect to Pokémon seen through a smartphone's camera. The court thus denies the motion to strike paragraphs 134–49 of the Turk Report.

At the hearing, Niantic emphasized its argument that, stripped of the example, the contentions did not disclose much. A related point Niantic made is that (again stripped of the example) the contentions were too generalized under the local rules to adequately disclose an Encounters-based theory. N.D. Cal. Patent L.R. 3-1(c) (the claim chart must "identify[] specifically where and how each limitation of each asserted claim is found within each [accused instrumentality]"). In *DSS Tech. Mgmt., Inc. v. Apple, Inc.*, for example, the court described the purpose of Local Rule 3-1 as "to be nit-picky, to require a plaintiff to crystalize its theory of the case and patent claims." No. 14-cv-05330-HSG, 2020 WL 210318, at *7 (N.D. Cal. Jan. 14, 2020) (cleaned up). The court held that the plaintiff's infringement contentions disclosed only Bluetooth Sniff Subrating Mode and not Bluetooth Sniff Mode because the contentions "consistently reference[d] Bluetooth Sniff Subrating Mode" and were not clear enough on Sniff Mode. *Id.* at *6–7.

The court appreciates this argument and it is true that NantWorks' infringement contentions could have been more specific on the Encounters mode (especially given that they were specific on the Map View mode). But there is a balance that must be struck here and the court thinks it fair for the Turk Report to elaborate (via the Encounters mode) on NantWorks' theory that in Pokémon Go, users "interact with Pokémon AR objects based on mobile phone/tablet computer location and the attributes of specific AR object(s)." *MasterObjects, Inc. v. Meta Platforms, Inc.*, No. C 21-05428 WHA, 2022 WL 4856269, at *1 (N.D. Cal. Oct. 3, 2022) ("The rules do not

---

[9] Infringement Contentions – ECF No. 228-4 at 17.

ORDER – No. 20-cv-06262-LB                4

1  require identification of every evidentiary item of proof, but the contentions must provide
2  reasonable notice why the disclosing party believes it has a reasonable chance of proving its
3  theory at trial.").

4  The next issue is whether paragraphs 162–68, 171, and 240 of the Turk Report should be
5  stricken on the ground that they introduce new infringement theories related to claims 22–23 of
6  the '051 patent. Asserted claim 22 recites: "The system of claim 1, wherein the determination of
7  whether to alter presence of the relevant AR object depends on a time." Asserted claim 23 recites:
8  "The system of claim 22, wherein the presence alteration of the relevant AR object changes with
9  the time."[10]

10 NantWorks' infringement contentions disclosed time-of-day-based functionality, "such as day
11 versus night or 'Spotlight Hours,' which are times of day that allegedly increase the prevalence of
12 a particular type of Pokémon."[11] (The contention for claim 22 began "*[s]ee* claim 1," and the
13 contention for claim 23 began "*[s]ee* claim 22."[12]) The Turk Report, on the other hand, allegedly
14 introduces new theories of weather-based functionality and "awareness meter" functionality (a
15 meter "that increases depending on the user's movement[] and . . . causes the Pokémon to flee or
16 jump behind bushes if the awareness meter fills up").[13] NantWorks counters that the references to
17 claim 1, from which claims 22 and 23 depend, are dispositive because the contention for claim 1
18 "does discuss the [role] of weather in the determination of context and the related limitation
19 'determine whether to alter presence of a relevant AR object based on at least the device location
20 and the virtual attribute.'"[14]

21 In theory, an infringement contention for dependent claims could incorporate an earlier
22 contention under Local Rule 3-1(c). But simply incorporating "claim 1" is a very generalized
23 infringement contention because of the many limitations of claim 1. The rules do call for specific

---

[10] U.S. Patent No. 10,403,051 (filed Nov. 9, 2018) – ECF No. 114-2.
[11] Mot. – ECF No. 228 at 13–15.
[12] Infringement Contentions – ECF No. 228-4 at 26.
[13] Mot. – ECF No. 228 at 15.
[14] Opp'n – ECF No. 231 at 17–18.

ORDER – No. 20-cv-06262-LB    5

identification of "where and how each limitation of each asserted claim is found within each [accused instrumentality]." N.D. Cal. Patent L.R. 3-1(c). In striking the relevant balance, the court thinks it would make the litigation "more fair" to strike paragraphs 162–68, 171, and 240 of the Turk Report.

## CONCLUSION

The court grants the motion in part and strikes paragraphs 162–68, 171, and 240 of the Turk Report. This resolves ECF No. 228.

**IT IS SO ORDERED.**

Dated: March 12, 2024

LAUREL BEELER
United States Magistrate Judge