COOLEY LLP
HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
MATTHEW J. BRIGHAM (191428)
(mbrigham@cooley.com)
DENA CHEN (286452)
(dchen@cooley.com)
ALEXANDRA LEEPER (307310)
(aleeper@cooley.com)
PATRICK W. LAUPPE (322218)
(plauppe@cooley.com)
3175 Hanover Street
Palo Alto, California 94304-1130
Telephone: (650) 843 5000
Facsimile: (650) 849 7400

COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
101 California Street, 5th Floor
San Francisco, California 94111-5800
Telephone: (415) 693 2000
Facsimile: (415) 693 2222

Attorneys for Defendant
NIANTIC, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

NANTWORKS, LLC, NANT HOLDINGS IP, LLC,

Plaintiffs,

v.

NIANTIC, INC.,

Defendant.

Case No. 3:20-CV-06262-LB

**DEFENDANT NIANTIC, INC.'S NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' DAMAGES EXPERT ALAN GOEDDE**

DATE: May 30, 2024
TIME: 9:30 A.M.
CTRM: B, 15TH FLOOR

**REDACTED VERSION**

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1
II. FACTUAL BACKGROUND .......... 2
 A. Accused Niantic Games .......... 2
 B. Dr. Goedde's Methodology .......... 2
  1. Dr. Goedde's Alleged Apportionment .......... 3
  2. Dr. Goedde's Alleged Comparable Agreements .......... 5
III. LEGAL STANDARD .......... 6
 A. Apportionment .......... 6
 B. License Comparability .......... 7
IV. ARGUMENT .......... 7
 A. Dr. Goedde Failed to Apply the Principles of Apportionment .......... 7
 B. Dr. Goedde's Relies on Rates From Agreements Without Any Technical Comparability Analysis .......... 9
V. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adasa Inc. v. Avery Dennison Corp.*,
55 F.4th 900 (Fed. Cir. 2022) ........ 7, 9, 10

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ........ 6, 10

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
879 F.3d 1299 (Fed. Cir. 2018) ........ 7

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
694 F.3d 51 (Fed. Cir. 2012) ........ 7, 8, 10

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) ........ 6

*NetFuel, Inc. v. Cisco Sys. Inc.*,
No. 5:18-cv-02352-EJD, 2020 WL 1274985 (N.D. Cal. Mar. 17, 2020) ........ 7

*ResQNet.com, Inc. v. Lansa, Inc.*,
594 F.3d 860 (Fed. Cir. 2010) ........ 6

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011) ........ 6, 7, 8, 9

*VirnetX, Inc. v. Cisco Sys., Inc.*,
767 F.3d 1308 (Fed. Cir. 2014) ........ 6, 8

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on **May 30, 2024 at 9:30 a.m.**, or as soon thereafter as the motion may be heard, in the courtroom of the Honorable Laurel Beeler, located at Courtroom B – 15th Floor, San Francisco Courthouse at 450 Golden Gate Ave., San Francisco, CA 94102, Defendant Niantic, Inc. ("Niantic") will and hereby does move to exclude certain testimony of Plaintiffs NantWorks, LLC and Nant Holdings IP, LLC's (collectively, "Plaintiffs") damages expert Dr. Alan Goedde. The motion is based upon this Notice, the Memorandum of Points and Authorities, the pleadings, all matters of which the Court may take judicial notice, and any other argument or evidence that may be presented in support of this Motion.

# STATEMENT OF RELIEF REQUESTED

Pursuant to Rule 56, this motion seeks to exclude certain testimony of Plaintiffs' damages expert Dr. Goedde. *First*, this motion seeks to exclude Dr. Goedde's opinions regarding apportionment because they are based on an arbitrary division of revenues unconnected to the facts. *Second*, this motion seeks to exclude Dr. Goedde's opinions regarding royalty rate, because they are based on agreements without any technical comparability analysis.

## I. INTRODUCTION

The Court should exclude both the opinions and testimony of Dr. Goedde because (1) he failed to apportion properly and did not show his work, and (2) his royalty rate was derived from noncomparable agreements without performing any technological comparison to the patent-in-suit.

***First***, Dr. Goedde does no apportionment to the patented technology. Rather than looking at the relative usage of the accused mode within a given game or attributable revenue generation, Dr. Goedde simply assumes the accused mode is as valuable as all of the other modes (with no basis to do so) and divides all of Niantic's revenue for that game by the number of modes. Thus, if a game has three modes, in Dr. Goedde's analysis, NantWorks gets a royalty on a full third of the revenues. If a game has two modes, NantWorks gets a royalty on half, and so on. Dr. Goedde uses this arbitrary approach despite the fact that the patent does not purport to have invented or claim entire game modes. Nor does the patent claim to provide benefits of fewer game modes that would justify increasing the royalty as the number of modes decreased. This fundamental error underlying Dr. Goedde's opinion cannot be solved through cross examination since the error is in the methodology itself, not in its application.

***Second***, to calculate an ultimate damages opinion, Dr. Goedde applies the incorrectly selected portion of revenue (1/3 v 1/2 etc.) against a royalty rate that is baseless and arbitrary. To determine the royalty rate, Dr. Goedde relies on *software* agreements (not patent licenses), involving unrelated parties, randomly selected by Dr. Goedde without any technical comparability analysis from anyone. Admitting that he was unqualified to perform such analysis, all Dr. Goedde did was rely on a broad search string which he ran in an irrelevant third-party database. Federal Circuit authority demands more from an expert before his opinions can be considered by a jury. The court should exercise its gatekeeper responsibilities to exclude the opinion and testimony of Dr. Goedde.

## II. Factual Background

### A. Accused Niantic Games

NantWorks accuses two games of infringing the '051 patent: Pokémon GO ("PGO") and Harry Potter: Wizards Unite ("HPWU"). According to Dr. Goedde, PGO allows users to explore a virtual world, which is mapped onto the physical world around the user's mobile device. (Ex. A[1] (Goedde Report), ¶ 19.) While exploring, users may "encounter" virtual Pokémon. (*Id.* ¶ 20.) During an "encounter," a user may attempt to "catch" a Pokémon. (*Id.*) Encounters and catches in PGO can occur in three modes: non-AR, classic AR, and AR+:

| Non-AR Mode | AR Classic Mode | AR+ Mode |
| --- | --- | --- |

(*Id.* ¶ 21.) HPWU has similar game play but, according to Dr. Goedde, has only two modes of play: non-AR and AR+. (*Id.* ¶ 38.)

For both the PGO and HPWU games, NantWorks alleges that infringement of the '051 patent takes place during an "encounter" but only while the user is operating in AR+ mode. (*Id.* ¶¶ 33, 38.)

### B. Dr. Goedde's Methodology

In order to derive an alleged reasonable royalty, Dr. Goedde performs a simple calculation: revenue times a royalty rate. (Ex. A, Schedule 2.) While Dr. Goedde's opinions contain numerous flaws, the focus of this motion is on the flaws in methodology for how Dr. Goedde allegedly "apportions" the applicable revenue, as required by patent law, and how he derives the royalty rate he used.

[1] Unless otherwise noted, all exhibits are to the Declaration of Matthew J. Brigham In Support of Motion to Exclude Testimony of Plaintiffs' Damages Expert Alan Goedde ("Brigham Decl."), filed herewith.

### 1. Dr. Goedde's Alleged Apportionment

Dr. Goedde starts with calculating all revenues received by Niantic for a given game, [redacted] (Ex. A, ¶¶ 45, 47, Schedule 2.) Dr. Goedde then claims to apportion this revenue to account for the accused feature (AR+ mode) being only one of many features of the game. (*Id.* ¶ 47, Schedule 2.) The sum total of Dr. Goedde's apportionment analysis is contained in the following two paragraphs:

[redacted]

[redacted] (*Id.*) Dr. Goedde includes a calculation supporting this opinion as Schedule 4 to his report:



As Dr. Goedde admitted during his deposition, however, this statement and his opinion based on it were both inaccurate. Dr. Goedde admitted that the data he relied on did not account for users that were operating in non-AR mode. (Ex. B (March 12, 2024 Goedde Depo. Tr.), 134:25-135:23.) In other words, [REDACTED] relied on by Dr. Goedde is just a comparison of the number of encounters in only two of the modes – AR Classic and AR+. (*Id.*) When asked to clarify the relevance of the [REDACTED] figure, Dr. Goedde distanced himself from the mistake and stated he was not relying on any usage data (despite it being in his report). (*Id.* 134:25-137:3.)

In particular, Dr. Goedde ignored more informative data about the relative usage of the accused AR+ mode. For example, [REDACTED] In preparing his report, Dr. Goedde did not look at any catch data to help inform his opinion on the percentage of users who play the game in AR+. (Ex. B, 138:19-24.)

Left with no factual support for his "apportionment", Dr. Goedde had to admit at deposition that he simply attributes a third of the royalties to AR+ because there are three modes of play. (*Id.* 132:24-133:10.) Similarly, to determine a royalty base for alleged infringement relating to the

HPWU game, Dr. Goedde uses his simple mode-division rule and divides by two, to account for the two HPWU modes, of which only the AR+ mode is allegedly infringing. (Ex. A, ¶ 48.)

**2. Dr. Goedde's Alleged Comparable Agreements**

In his report, Dr. Goedde concluded that the parties to the hypothetical negotiation would have agreed to a 5% royalty rate. (Ex. A, ¶ 46.) This 5% royalty rate did not come from any agreements involving either of the parties, or involving the '051 Patent, or even involving a straightforward patent license at all. Instead, the 5% was the median base royalty of a set of software agreements Dr. Goedde reviewed from a third-party database. (*Id.* ¶ 35)

To identify so-called comparable agreements, Dr. Goedde submitted a search string to a third-party database, "RoyaltySource." (Ex. B, 69:2-11; Ex. A, ¶ 35.) While Dr. Goedde could not recall all the search terms he used, the two "main" terms he used were "augmented reality" and "software." (Ex. B, 69:12-16.) Dr. Goedde's search resulted in what he estimated was nine or ten agreements, four or five of which were exclusive, and one of which involved an unknown lump-sum. (*Id.*, 70:14-71:25.) When asked to clarify what he culled from the third-party search results, Dr. Goedde could recall neither parties nor damages figures. (*Id.* 71:8-72:13.)

Following the elimination of exclusive agreements and a singular lump-sum agreement, Dr. Goedde claims to have confirmed that the remaining agreements involved "augmented reality" but based his selection on no other factual support for comparability. (*Id.* 73:16-20; 78:16-79:11.) In particular, Dr. Goedde did not consult a technical expert and repeatedly admitted that he is not a technical expert. (*See, e.g.*, *id.* 79:2-4; 155:15.) When asked during his deposition to explain the factual background for the agreements he relied upon, Dr. Goedde was unable to articulate the relationship between the parties, the scope of the rights granted by the license, or define the technology that was being licensed. (*See, e.g.*, *id.* 80:2-82:11; 84:25-86:15; 94:2-95:14.) Dr. Goedde was also not able to point to anything beyond the fact that the technology was apparently important enough to be worth licensing, to support the relevance of the technology to the parties. (*See, e.g.*, *id.* 103:1-21.)

## III. LEGAL STANDARD

A district court is to function as a "gatekeeper" to determine whether a party's proffered expert testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-91 (1993). Plaintiff NantWorks bears both the burden of showing that the proposed damages testimony meets the threshold reliability requirements for admission, *Daubert*, 509 U.S. at 588, 591, as well as the burden of proving damages, *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). Patent damages must be rooted in sound economic theory, and the evidence "must be tied to the relevant facts and circumstances of the particular case at issue and the hypothetical negotiations that would have taken place in light of those facts and circumstances at the relevant time." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315, 1318 (Fed. Cir. 2011) ("If the patentee fails to tie the theory to the facts of the case, the testimony must be excluded.").

Expert testimony is only admissible if the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," "the testimony is based on sufficient facts or data," "the testimony is the product of reliable principles and methods," and "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702; *Daubert*, 509 U.S. at 588, 591. The Federal Circuit has rigorously enforced the reliability requirements for expert damages testimony under Rule 702 and *Daubert*. In particular, Federal Circuit precedent requires NantWorks to "carefully tie proof of damages to the claimed invention's footprint in the market place." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010).

### A. Apportionment

When an accused product includes both accused and unaccused features, "[t]he law requires patentees to apportion the royalty down to a reasonable estimate of the value of its claimed technology, or else establish that its patented technology drove demand for the entire product." *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1329 (Fed. Cir. 2014). District courts should exercise their gatekeeping authority to "ensure that only theories comporting with settled principles of apportionment [are] allowed to reach the jury." *Id.* at 1328. Claimants "must in every case give

evidence tending to separate or apportion" damages between accused and unaccused product features, "and such evidence must be reliable and tangible, and not conjectural or speculative." *Uniloc*, 632 F.3d at 1318 (citation omitted).

### B. License Comparability

When relying on licenses to prove a reasonable royalty, "alleging a loose or vague comparability between different technologies or licenses does not suffice." *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012). As the Federal Circuit recently reiterated, "[w]hen relying on allegedly comparable licenses, the proponent "must account for differences in the technologies and economic circumstances of the contracting parties." *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 915 (Fed. Cir. 2022) (citation omitted).

## IV. ARGUMENT

### A. Dr. Goedde Failed to Apply the Principles of Apportionment

Dr. Goedde was required, and failed, to properly apportion those damages attributable to the accused AR+ mode, let alone the allegedly patented features of that mode. *See Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1309 (Fed. Cir. 2018) ("When the accused technology does not make up the whole of the accused product, apportionment is required."). While "some approximation" is allowed in determining a reasonable royalty, this does not negate "the Federal Circuit's requirement of 'sound economic and factual predicates' for [the expert's] analysis." *NetFuel, Inc. v. Cisco Sys. Inc.*, No. 5:18-cv-02352-EJD, 2020 WL 1274985, at *7 (N.D. Cal. Mar. 17, 2020) (citation omitted). The patentee must present evidence that is "reliable and tangible, and not conjectural or speculative." *Finjan*, 879 F.3d at 1310 (citations omitted). Far from relying on "sound economic and factual predicates," Dr. Goedde's analysis arises from "an impermissible black box," based on "vague qualitative notions of relative importance" and an admittedly erroneous understanding of the data. *NetFuel* at *6-7; Ex. B, 129:21-154:4.

In light of his deposition admissions, it is undisputed that Dr. Goedde did not rely on any data about usage of, or revenue generated by, the accused AR+ mode. (Ex. B, 137:18-138:24; 175:13-176:3.) Instead, Dr. Goedde improperly avoids the task of apportionment by assigning the AR+ mode a "proxy" value of one-third of total revenues. (*Id*. 132:24-133:1; 141:15-142:9.) Dr.

Goedde claims that he arrived at 33% because he had no "better information" than the fact that there are three PGO modes. (Goedde Depo. 137:5-25). In similar fashion, Dr. Goedde improperly applies a rate of 50% to the HPWU game, based solely on the fact that AR+ is one of the two modes of play. (Ex. A, ¶ 48.) With *no* basis for doing so, Dr. Goedde assumes that each game mode is equally responsible for the revenues derived from the accused product.

To the contrary, the facts available paint a much different picture as to the relative importance and usage of the accused AR+ mode. [REDACTED] Yet, by ignoring this (and all) data, Dr. Goedde renders an opinion that encounters in some form of AR are responsible for two-thirds or *66%* of the revenue. Dr. Goedde provides no rationale for assuming a 66% (total AR) or 33% (AR+) allocation of revenue when all of the available data points to far less usage.

This is not a disagreement about *which* facts to apply, or the weight to be given them, that can simply be addressed at cross-examination. Rather, this is a situation where the expert ignored the facts, rendering any perceived "methodology" meaningless and not proper to put before a jury. At best, Dr. Goedde provides only "vague qualitative notions of the relative importance of the [patented] technology" to arrive at a higher royalty rate based on an arbitrary and inflated royalty figure "plucked out of thin air." *LaserDynamics,* 694 F.3d at 69. By not "tak[ing] into account the facts of the particular [accused functionality]," Dr. Goedde fails to "sufficiently [tie the expert testimony on damages] to the facts of the case." *Uniloc*, 632 F.3d at 1315-16 (citations omitted).

Given that Dr. Goedde's opinion rests on an apportionment that has no relationship to the facts, but instead merely makes an arbitrary division of revenues, Dr. Goedde's opinions should be excluded. *See LaserDynamics,* 694 F.3d at 69 (rejecting damages expert's opinion where expert failed to consider the value of specific and separate functionalities of the accused product); *VirnetX,*

767 F.3d at 1326 (vacating damages award and ruling that the patentee's damages expert's opinion should have been excluded since it failed to appropriately apportion the value of the patented feature).

**B. Dr. Goedde's Relies on Rates From Agreements Without Any Technical Comparability Analysis**

It is undisputed that the agreements that Dr. Goedde relies on for determining a royalty rate do not involve the '051 patent. (Ex. B, 78:14-15; 91:6-7; 106:20-21; 113:21-23; 120:12-14.) As a result, NantWorks has the burden to show that the agreements nevertheless involve comparable technology. *See Adasa*, 55 F.4th at 915 ("The party proffering a license bears the burden of establishing it is sufficiently comparable to support a proposed damages award.") (citing *Lucent Techs*., 580 F.3d at 1329).

NantWorks has not met its burden of establishing sufficient comparability between the '051 patent and other licensed technology to support Dr. Goedde's proposed damages award. Dr. Goedde, an economist and damages expert, was admittedly unqualified to provide such analysis. (*See, e.g.*, Ex. B, 155:15 ("Well, I'm not a technical expert[.]"); Fed. R. Evid. 702.) NantWorks' technical expert, Dr. Turk, did not proffer any opinions on the technology in these "RoyaltySource" agreements, nor did Dr. Goedde even discuss them with Dr. Turk.[2] (*Id*. 79:12-14.) Instead of relying on the analysis of a technical expert, Dr. Goedde "put in a search string" for "augmented reality" in a database. (Ex. B, 69:2-16.) And the results are telling. Whereas Niantic would seek a hypothetical license for use of the '051 patent claims in a *game*, PGO and/or HPWU, Dr. Goedde's broad software license agreements allegedly cover technologies such as (1) "automated mini markets", (2) software to enable professional users to "design, visualize, simulate, specify and manufacture products" "such as fabric, or leather," and (3) a software development kit used to render 3D images of a user's face to "ensure realistic makeup effects." (Ex. A, Tab 2.)

Dr. Goedde advances no factual basis to associate the technology contained in these agreements to the particular hypothetical negotiation at issue involving the '051 patent. *See Uniloc*, 632 F.3d at 1317. Dr. Goedde simply copied and pasted "licensed property" descriptions of third-

[2] When NantWorks' technical expert, Dr. Matthew Turk, was asked if he had ever spoken to Dr. Goedde about this case, he replied that he had not. (Ex. D, 164:12-14)

party summaries and deemed them "comparable" without any comparison to the claims of the '051 patent (because he was not qualified to do so) nor a conversation with, or analysis by, the technical expert Dr. Turk. (Ex. B, 79:12-24.) If "RoyaltySource" classified a software license as being in the "augmented reality" field, Dr. Goedde concludes it must therefore be comparable to a license to the '051 patent. But Dr. Goedde bases his opinion on the exact type of "conclusory observations" the Federal Circuit has found to be insufficient to establish comparability. *Adasa*, 55 F.4th at 915 ("That the licensed portfolios "include" patents that cover "RFID technology" says little, if anything, about their relation to the [patent-in-suit]. "RFID technology" is too broad and vague a category, without more, to serve as a meaningful comparison point to the specific technology at issue in this case.") Without any technical comparability analysis, Dr. Goedde alleges only a "loose or vague" relationship between licenses, failing to account for differences between technologies. *See LaserDynamics*, 694 F.3d at 79.

Far from being helpful to the trier of fact, Dr. Goedde's methodology for the selection of comparable licenses is purely speculative and must be excluded.

## V. CONCLUSION

Dr. Goedde's damages opinions are fundamentally unreliable and not based on any facts of this case. His "divide by number of modes" methodology violates established Federal Circuit authority on apportionment. Similarly, damages experts are not permitted to rely on agreements when no technical comparability analysis is performed. For the reasons stated above, Dr. Goedde's opinions are inadmissible under Federal Rule of Evidence 702 and *Daubert*. As a result, Defendant's motion should be granted and Dr. Goedde should be precluded from offering such opinions at trial.

Dated: April 18, 2024

COOLEY LLP

*/s/ Alexandra Leeper*

HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
MATTHEW J. BRIGHAM (191428)
(mbrigham@cooley.com)
DENA CHEN (286452)
(dchen@cooley.com)
ALEXANDRA LEEPER (307310)
(aleeper@cooley.com)
PATRICK W. LAUPPE (322218)
(plauppe@cooley.com)
3175 Hanover Street
Palo Alto, California 94304-1130
Telephone: (650) 843 5000
FACSIMILE: (650) 849 7400

COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111
Telephone: (415) 693 2000
Facsimile: (415) 693 2222

*Attorneys for Defendant Niantic, Inc.*