COOLEY LLP
HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
MATTHEW J. BRIGHAM (191428)
(mbrigham@cooley.com)
DENA CHEN (286452)
(dchen@cooley.com)
ALEXANDRA LEEPER (307310)
(aleeper@cooley.com)
PATRICK W. LAUPPE (322218)
(plauppe@cooley.com)
3175 Hanover Street
Palo Alto, California 94304-1130
Telephone:	(650) 843 5000
Facsimile:	(650) 849 7400

COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
101 California Street, 5th Floor
San Francisco, California 94111-5800
Telephone:	(415) 693 2000
Facsimile:	(415) 693 2222

Attorneys for Defendant
NIANTIC, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NANTWORKS, LLC,<br>NANT HOLDINGS IP, LLC,<br><br>   *Plaintiffs*,<br><br> v.<br><br>NIANTIC, INC.,<br><br>   *Defendant*. | Case No. 3:20-CV-06262-LB<br><br>Magistrate Judge Laurel Beeler<br><br>**DEFENDANT NIANTIC, INC.'S OPPOSITION TO PLAINTIFFS NANTWORKS, LLC AND NANT HOLDINGS IP, LLC'S MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF DEFENDANT'S EXPERTS JULIA ROWE AND NATHANIEL POLISH UNDER FED. R. EVID. 702 AND *DAUBERT***<br><br>DATE: May 30, 2024<br>TIME: 9:30 a.m.<br><br>Courtroom B – 15th Floor<br>450 Golden Gate Ave.<br>San Francisco, CA 94102 |

**REDACTED VERSION**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................. 1
II. LEGAL STANDARD ....................................................................................................... 1
III. ARGUMENT .................................................................................................................... 1
    A. NantWorks' Motion to Exclude Ms. Rowe's Non-Infringing Alternatives Analysis is Meritless ............................................................... 1
    B. Ms. Rowe Properly Relied on Niantic's Usage Data Produced During Fact Discovery and Upon Which NantWorks' Own Damages Expert Relied ........ 4
    C. Ms. Rowe's Reliance on the ■■■■■■■■■ Agreement is Proper .................... 5
    D. NantWorks' Attack on Dr. Polish's Obviousness Motivations to Combine Analysis as Alleged "Marketing" Opinions is Misplaced ........................................ 7
        1. Motivations to combine are from the perspective of a POSITA ................. 7
        2. Dr. Polish was well-qualified to provide the opinions in his report for obviousness motivations to combine from the perspective of a POSITA ........................................................................................................ 8
    E. NantWorks' Attack on Dr. Polish's "Generic" and "Conventional" Opinion Fails Because NantWorks Did Not Attach the Relevant Analysis and Support ..................................................................................................................... 9
IV. CONCLUSION ............................................................................................................... 10

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Abaxis, v. Cepheid,*
   No. 10-cv-02840-LHK, 2012 WL 2979019 (N.D. Cal. July 19, 2012) ............................... 8

*Apple v. Motorola,*
   757 F.3d 1286 (Fed. Cir. 2014), *overruled on other grounds by Williamson v.
   Citrix Online,* 792 F.3d 1339 (Fed. Cir. 2015) ............................................................... 2

*In the Matter of Certain Video Game Sys. and Wireless Controllers and
   Components Thereof,*
   No. 337-TA-770, 2013 WL 12410036 (Oct. 28, 2013) ................................................... 8

*Core Wireless Licensing S.A.R.L. v. Apple,*
   No. 15-cv-05008 NC, 2016 WL 8231157 (N.D. Cal. Nov. 18, 2016) .............................. 2

*Cover v. Windsor Surry,*
   No. 14-cv-05262-WHO, 2017 WL 9837932 (N.D. Cal. July 24, 2017) ........................... 8

*Creative Kingdoms v. Int'l Trade Com'n,*
   588 F. App'x 993 (Fed. Cir. 2014) .................................................................................. 8

*Daubert v. Merrell Dow Pharms.,*
   509 U.S. 579 (1993) ............................................................................................... passim

*Elbit Sys. Land & C4I v. Hughes Network Sys.,*
   927 F.3d 1292 (Fed. Cir. 2019) ....................................................................................... 5

*Ericsson v. D-Link Sys.,*
   773 F.3d 1201 (Fed. Cir. 2014) ....................................................................................... 5

*FullView v. Polycom,*
   No. 2023-1201, 2024 WL 1843686 (Fed. Cir. Apr. 29, 2024) ..................................... 7, 8

*Georgia Pacific v. U.S. Plywood,*
   318 F. Supp. 1116 (S.D.N.Y. 1970), *aff'd as modified,* 446 F.2d 295 (2d Cir.
   1971) ............................................................................................................................... 5

*Good Tech. v. Mobileiron,* No. 5:12-cv-05826-PSG,
   2015 WL 4197554 (N.D. Cal. July 10, 2015) (same) ................................................. 2, 3

*Grain Processing v. Am. Maize-Prods.,*
   185 F.3d 1341 (Fed. Cir. 1999) .................................................................................. 3, 4

*KSR Int'l v. Teleflex,*
   550 U.S. 398 (2007) ........................................................................................................ 7

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Montera v. Premier Nutrition Corp.*,
   No. 16-cv-06980-RS, 2022 WL 1225031 (N.D. Cal. Apr. 26, 2022) ........................................ 8

*In re MyFord Touch Consumer Litig.*,
   291 F. Supp. 3d 936 (N.D. Cal. 2018) ..................................................................................... 3

*Pecover v. Elec. Arts.*,
   No. C 08-2820 VRW, 2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) ...................................... 8

*Presidio Components v. Am. Tech. Ceramics*,
   702 F.3d 1351 (Fed. Cir. 2012) ............................................................................................ 3, 4

*Primiano v. Cook*,
   598 F.3d 558 (9th Cir. 2010) ................................................................................................... 1

*Prism Techs. v. Sprint Spectrum*,
   849 F.3d 1360 (Fed. Cir. 2017) ............................................................................................ 5, 6

*Synopsys v. Siemens Indus. Software*,
   No. 20-cv-04151-WHO, 2024 WL 1683637 (N.D. Cal. Apr. 17, 2024) .................................. 5

## TABLE OF CITED EXHIBITS

| Dkt. # / Ex. # | Description |
|---|---|
| Dkt. 251-1 | Rowe Report |
| Dkt. 246-6 | Turk Opening Report |
| Dkt. 246-5 | Polish Report, including Appendices |
| Dkt. 249-2 | Goedde Report, including Schedule 4 |
| Chen Ex. 1 | Rowe Depo. |
| Chen Ex. 2 | Balakrishnan Depo. |
| Chen Ex. 3 | Jeffery Depo. |
| Chen Ex. 4 | NIA_00151611 |
| Chen Ex. 5 | Goedde Depo. |
| Chen Ex. 6 | Polish Depo. |

## I. INTRODUCTION

NantWorks provides no basis for excluding the reasoned expert opinions of Niantic's experts – Julia Rowe (damages expert) and Nathaniel Polish (technical expert). Rather, NantWorks' motion shows a fundamental misunderstanding of the law and illustrates that cross-examination—not exclusion—is the correct outcome.

## II. LEGAL STANDARD

The focus in *Daubert* "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert v. Merrell Dow Pharms*., 509 U.S. 579, 595 (1993); *Primiano v. Cook*, 598 F.3d 558, 564-65 (9th Cir. 2010) ("[T]he district judge is 'a gatekeeper, not a fact finder.'") (citation omitted). Otherwise, "cross-examination, presentation of contrary evidence, and careful instruction" are how expert issues are handled. *Daubert*, 509 U.S. at 596.

## III. ARGUMENT

### A. NantWorks' Motion to Exclude Ms. Rowe's Non-Infringing Alternatives Analysis is Meritless

NantWorks attacks Ms. Rowe's non-infringing alternative analysis based on two misplaced arguments: (1) that Ms. Rowe consulted a deposed Niantic Rule 30(b)(6) fact witness (Jake Jeffery) and a Niantic technical expert (Dr. Balakrishnan) in conversations *cited* and *described in her expert report*, and (2) that NantWorks believes that Ms. Rowe's report does not adequately address the availability of the acceptable non-infringing alternative. (Mot. at 2.) Both arguments fail.

Using the well-established cost approach for patent damages analysis, Ms. Rowe opines that a non-infringing alternative would have been the removal of the accused AR Plus feature from the accused products. (Dkt. 251-1 ("Rowe Report") ¶¶ 101-110.) Although such a common-sense conclusion (that is, simply remove the allegedly infringing feature) does not require actual technical expertise, Ms. Rowe nonetheless bolstered her opinion by consulting both Niantic's Senior Director of Engineering (Mr. Jeffery) and Niantic's technical expert (Dr. Balakrishnan). (*E.g.*, Rowe Report ¶¶ 106, 108, 114.)

Ms. Rowe described what Mr. Jeffery and Dr. Balakrishnan told her and cited the basis

for her opinions in her report. (*E.g.*, Rowe Report ¶¶ 106, 108.) Specifically, Niantic's Senior Director of Engineering and Rule 30(b)(6) witness—Mr. Jeffery—informed Ms. Rowe that: (a) "AR Plus was not available in the accused games since they were launched, and ███████ ███████ (b) "to the extent that Niantic either ███████ ███████" to Niantic, (c) ███████ (d) ███████ and ███████ (*E.g.*, Rowe Report ¶¶ 154, n.301 (citing Jeffery depo), 108, 106.) Not only was Ms. Rowe's conversation with Mr. Jeffery not a "secret" as NantWorks claims (Mot. at 2), but the conversation was fully disclosed, including his identity and the content of their conversation, as described in her report. (*E.g.*, Rowe Report ¶¶ 108, 113-14, 149 n.295 (citing "Interview of Mr. Jeffery").)[1]

Likewise, Ms. Rowe's report detailed her conversation with Niantic's technical expert, Dr. Balakrishnan. She explained that "I understand from Dr. Balakrishnan that a non-infringing alternative to the '051 patent would be to not offer the accused AR Plus mode. The AR Plus mode is the only aspect of the accused games that is alleged to infringe the '051 patent." (Rowe Report ¶ 106.) Nothing in NantWorks' motion indicates any rational reason to exclude Ms. Rowe's non-infringing alternative opinions.

---

[1] Such properly disclosed conversations are consistent with the Federal Rules. *E.g.*, *Apple v. Motorola*, 757 F.3d 1286, 1318, 1322 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online*, 792 F.3d 1339 (Fed. Cir. 2015) (damages expert could rely on technical information provided by the defendant or its technical expert for non-infringing alternatives); *Core Wireless Licensing S.A.R.L. v. Apple*, No. 15-cv-05008 NC, 2016 WL 8231157, at *3 (N.D. Cal. Nov. 18, 2016) (denying *Daubert* motion where damages expert relied on others for non-infringing alternative facts); *Good Tech. v. Mobileiron*, No. 5:12-cv-05826-PSG, 2015 WL 4197554, at *4 (N.D. Cal. July 10, 2015) (same); Fed. R. Evid. 703. NantWorks also deposed everyone involved, including Mr. Jeffery, Ms. Rowe, and Dr. Balakrishnan. (*E.g.*, Chen Ex. 1 ("Rowe Depo.") 77:3-14, 18:15-21; 48:20-49:9; 85:19-24, *etc.*; Chen Ex. 2 ("Balakrishnan Depo.") 8:8-9; Chen Ex. 3 ("Jeffery Depo.") 7:4; 264:17; 258:23-25; 12:10-11.) Niantic's record stands in stark contrast to the truly "secret" source code conversations that allegedly occurred between NantWorks' expert (Dr. Turk) and unnamed code reviewers—individuals who have not been identified by Dr. Turk by name, the contents of the conversations were not included in Dr. Turk's report, and the conversations were deemed by NantWorks' counsel to be forbidden topics in deposition. (Dkt. 250 at 4.)

1    The thrust of NantWorks' other attack is to the availability and acceptability of the non-
2  infringing alternative, and whether the alternative would offer the same "benefits." (Mot. at 2-3.)
3  But this is a disagreement on the **merits**, not the basis for a *Daubert* attack. As Ms. Rowe's report
4  explains, ███████████████████████████████████ (Rowe Report ¶ 9),
5  AR Plus was not available in the accused games at launch (Rowe Report ¶ 106), and ████
6  ███████████████████████████████████ (Rowe Report ¶ 107; *see also*
7  Rowe Report ¶¶ 101-110). If NantWorks wishes to challenge Ms. Rowe's opinion, the proper
8  forum to do so is during cross-examination, not a *Daubert* motion. *E.g.*, *Good Tech.*, 2015 WL
9  4197554, at *4; *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 967 (N.D. Cal. 2018)
10 ("It traditionally falls upon cross-examination to negate the facts or factual assumptions underlying
11 an expert's opinion."). To be sure, even the singular portion of Ms. Rowe's deposition testimony
12 upon which NantWorks relies does not say what NantWorks claims it does. (*Compare* Mot. at 3
13 (arguing Ms. Rowe "did not offer any opinions about whether 'removing' the AR+ encounter
14 feature from the accused products would have provided the same benefits" as the claimed
15 invention) *with* cited Rowe Depo. "59:8-61:21" (making the unremarkable claim that she is not the
16 "technical expert," but she did consider "benefits" in her report).)

17    NantWorks' application of case law is also highly misleading. NantWorks relies on
18 *Presidio Components*, but in that case the issue was lost profits—not reasonable royalty—and
19 NantWorks leaves out the important qualifier of "in some instances" from the quote to falsely imply
20 there is a blanket rule. (*Compare* Mot. at 2 *with Presidio Components v. Am. Tech. Ceramics*,
21 702 F.3d 1351, 1361 (Fed. Cir. 2012) ("**In some instances**, as is true in this case, products lacking
22 the advantages of the patented invention 'can hardly be termed a substitute acceptable to the
23 customer who wants those advantages.'" (internal citation omitted; emphasis added).)
24 *Presidio Components* was also a post-trial ruling—not a *Daubert* ruling—further demonstrating
25 that courts allow the advantages and disadvantages of a non-infringing alternative to be decided by
26 the trier of fact.

27    NantWorks also mis-cites *Grain Processing*. (*Compare* Mot. at 2-3 *with Grain Processing
28 v. Am. Maize-Prods.*, 185 F.3d 1341, 1351 (Fed. Cir. 1999).) In *Grain Processing*, the court upheld

the lower court's decision that the patent holder was not entitled to lost profit damages and that the lower court properly considered the availability of a non-infringing alternative. 185 F.3d at 1350-53 ("[T]he infringer should have a chance to argue what he or she might have done in the absence of infringement. Obviously, if the defendant is not permitted to present evidence of this ilk, the analysis is quite skewed: only the patentee's 'best case' scenario is presented, rather than a more realistic scenario.") (citation omitted).[2] NantWorks' motion fails.

### B. Ms. Rowe Properly Relied on Niantic's Usage Data Produced During Fact Discovery and Upon Which NantWorks' Own Damages Expert Relied

NantWorks seeks to exclude Ms. Rowe's testimony based on a Niantic produced document from fact discovery (Chen Ex. 4 (NIA_00151611) ("Niantic's Produced Usage Data")), arguing that Ms. Rowe "has not established that this is the sort of information that someone with her expertise would reasonably rely upon." (Mot. at 3.) NantWorks' motion falls apart easily, because NantWorks' own damages expert relied on this very same document in his opening report. (*E.g.*, Dkt. 249-2 ("Goedde Report") ¶ 47; Schedule 4.) Indeed, NantWorks' expert embraced ▓ and performed calculations based on this data in his report. (Goedde Report ¶ 47; Schedule 4.)

After NantWorks' expert, Dr. Goedde, served his report, Niantic's expert, Ms. Rowe, then served her *rebuttal* damages expert report. Studying the same data NantWorks' expert relied upon, Ms. Rowe exposed that Dr. Goedde misread Niantic's document. Specifically, ▓ ▓. (Rowe Report ¶ 149.) But, Dr. Goedde's calculation did not ▓ ▓ (*Id.*) Instead, the data "showed that ▓ ▓ (Rowe Report ¶¶ 203, 148, 204-205.) During deposition, Dr. Goedde, admitted that Ms. Rowe was correct and that he had drawn the wrong conclusion. (Chen Ex. 5 ("Goedde Depo.") 134:25-135:23.)

---

[2] In a footnote, NantWorks asserts that neither Dr. Balakrishnan nor Mr. Jeffery may testify about non-infringing alternatives based on Rule 37. (Mot. at 3, n.1.) NantWorks is wrong. Dr. Balakrishnan provided extensive testimony in an unchallenged 100+ page report about the accused features and non-infringement, and NantWorks deposed Mr. Jeffery about AR Plus and the accused features and products. (*E.g.*, Dkt. 246-10; Rowe Report ¶ 154, n.301.)

1    Now, to save face, NantWorks seeks to attack Ms. Rowe's reliance on the data both sides'
2  experts considered. All of NantWorks' gripes fall flat, and—at best, are fodder for cross-
3  examination. (Mot. at 3.) Because the data came from Niantic, Niantic's fact witnesses may
4  authenticate and sponsor the document at trial, and the Federal Rules permit experts to rely on even
5  inadmissible evidence. Fed. R. Evid. 703; *Synopsys v. Siemens Indus. Software*, No. 20-cv-04151-
6  WHO, 2024 WL 1683637, at *8 (N.D. Cal. Apr. 17, 2024) (reliability objections are "grounds for
7  cross-examination, not exclusion"). NantWorks' gripes go to the weight of the evidence, not the
8  admissibility of Ms. Rowe's expert opinion.

       **C.   Ms. Rowe's Reliance on the ▮▮▮▮▮▮▮▮ Agreement is Proper**

Relying heavily on out-of-district and inapposite case law (Mot. at 4-5), NantWorks incorrectly suggests that patent settlement agreements are inadmissible. To the contrary, it is well-established by the Federal Circuit that patent settlement agreements of a party may be highly probative of the damages inquiry, *Prism Techs. v. Sprint Spectrum*, 849 F.3d 1360, 1368-71 (Fed. Cir. 2017), so long as they are sufficiently comparable and "differences in circumstances" are accounted for appropriately. *Elbit Sys. Land & C4I v. Hughes Network Sys.*, 927 F.3d 1292, 1299 (Fed. Cir. 2019) (collecting cases); *Ericsson v. D-Link Sys.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014) ("that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility").

Ms. Rowe used the well-established *Georgia-Pacific* Factor # 2 to consider "[t]he rates paid by the licensee [Niantic] for the use of other patents comparable to the patent in suit." (Rowe Report ¶¶ 83-100, 126; *Georgia Pacific v. U.S. Plywood*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *aff'd as modified*, 446 F.2d 295 (2d Cir. 1971).) Ms. Rowe appropriately considered the technical and economic similarities and differences between the ▮▮▮▮▮ agreement and the facts of this case. (Rowe Report ¶¶ 68, 86-100, n.369.)

***Detailed Technical Comparability Analysis***: As is common for damages experts, Ms. Rowe relied on Niantic's technical expert, Dr. Balakrishnan, for the technical comparability portion of the expert analysis. (Rowe Report ¶¶ 89-90.) Dr. Balakrishnan provided pages of analysis in his report—none of which is challenged in NantWorks' *Daubert* motion. (Dkt. 246-10

1  ("Balakrishnan Report") ¶¶ 179-191; *cf*. Mot. at 4-6.)

2  ***Detailed Economic Comparability Analysis***:  Ms. Rowe also conducted the requisite
3  economic comparability analysis. The ▮▮▮▮ agreement involved one of the parties in this
4  litigation (Niantic) and occurred around the same time as the hypothetical negotiation.
5  (Rowe Report ¶¶ 95, 78, 79, 86.)  Ms. Rowe explained that she considered how the settlement may
6  have affected the royalty rate agreed upon by the parties. (Rowe Report ¶ 93; Rowe Depo. 139:11-
7  23.)  For example, she noted the types of infringement, invalidity, and damages information that
8  had been exchanged prior to the settlement. (Rowe Report ¶ 93.)  Ms. Rowe also addressed disputes
9  about the infringement and validity of the ▮▮▮▮ patents at issue and the fact that Niantic agreed
10 not to challenge the patents as part of the agreement. (Rowe Report ¶¶ 86-100; Rowe Depo. 140:2-
11 142:21.)

12  Ms. Rowe's analysis was entirely consistent with what the law requires. *E.g.*, *Prism Tech*,
13 849 F.3d at 1368-71 (describing considerations for the admissibility of settlement agreements).[3]
14 *Daubert* must focus "solely on principles and methodology, not on the conclusions that they
15 generate." *Daubert*, 509 U.S. at 595.  NantWorks' attack is to the *weight* of the evidence, not its
16 admissibility.

17  //
18  //
19  //
20  //
21  //
22  //
23  //
24  //

---

[3] NantWorks' attack on Ms. Rowe is ironic given its own expert's poor showing. NantWorks' expert, Dr. Goedde, failed to even address the technical comparability aspects of the agreements he cited and had no knowledge of the economic facts and circumstances surrounding the agreements he cited. (Dkt. 249 at 9-10.)

**D.  NantWorks' Attack on Dr. Polish's Obviousness Motivations to Combine Analysis as Alleged "Marketing" Opinions is Misplaced**

**1.  Motivations to combine are from the perspective of a POSITA**

NantWorks seeks to exclude Dr. Polish's obviousness opinions regarding the motivations to combine the Turf Wars and Parallel Kingdom grounds—characterizing the opinions as alleged "marketing" opinions. (Mot. at 7.) NantWorks appears to misunderstand obviousness law.

In patent obviousness doctrine, the "motivation to combine" must be based on the perspective of a POSITA (*i.e.*, a person of ordinary skill in the art). *FullView v. Polycom*, No. 2023-1201, 2024 WL 1843686, at *2 (Fed. Cir. Apr. 29, 2024); *KSR Int'l v. Teleflex*, 550 U.S. 398, 424-25 (2007). "Determining whether one of ordinary skill in the art would have been motivated to combine the teachings of different references is a flexible inquiry." *FullView*, 2024 WL 1843686, at *2 (citation omitted). Indeed, experts may rely on "common sense when explained with sufficient reasoning." *Id*.

Both sides' technical experts opined on the appropriate standard for a POSITA—***neither*** definition required "marketing" expertise. (*Compare* Dkt. 246-6 ("Turk Opening Report") ¶ 33 (definition proposed by NantWorks' expert) *with* Dkt. 246-5 ("Polish Report") ¶ 34 (definition proposed of Niantic's expert).) In other words, **it is undisputed that a POSITA does not have to have "marketing" experience**. NantWorks' argument that "marketing" expertise is required to opine about motivations to combine is thus completely off base.[4]

---

[4] Even if "marketing" experience were required (which it is not), only Dr. Polish—not NantWorks' expert Dr. Turk—has the requisite experience. Dr. Polish's CV confirms that he has real-world expertise regarding marketing and product development of consumer-facing software. (*E.g.*, Dkt. 246-5 ("Polish Report"), Appx. 1 at 4 ("Developed and oversaw implementation of marketing strategies, budgets, and business plans."); *id.* at 3 (indicating that Dr. Polish "[e]stablished marketing plans" and "[d]irected marketing of products in trade shows, national advertisements and focus groups").) Dr. Polish also worked on software development projects that required consideration of business and consumer factors. (*E.g.*, Appx 1 at 1 ("Developed web-based content management system and interface for customizable user preferences."); *id.* at 2 ("Designed and developed a series of products to deliver digital video and audio materials over wide-area internet using consumer grade computers."); *id.* at 3 ("System design implemented in commercial product."); *id.* at 3 (describing Dr. Polish's co-founding of a company "concentrating on portable products with international mass-market appeal").) Additionally, Dr. Polish acted in business-related roles regarding software development. (*E.g.*, *id.* at 1 ("[D]eveloped all technical sections to the business plans."); *id.* at 2 ("Wrote technical specification of business and logistical components of the system.").); *id.* at 3 ("Wrote business plan and raised $350,000 startup

NantWorks also argues that Dr. Polish is not a "gaming" expert. (Mot. at 7-8.)[5] But again, NantWorks fails to establish that "gaming" or "mobile gaming" expertise is necessary for the obviousness motivations to combine opinions in Dr. Polish's report. (*Compare* Turk Opening Report ¶ 33 and Polish Report ¶ 34 *with* Polish Appx 1 (CV showing he easily satisfies the POSITA definitions provided by both sides).)

### 2. Dr. Polish was well-qualified to provide the opinions in his report for obviousness motivations to combine from the perspective of a POSITA

NantWorks does not challenge Dr. Polish's computer science credentials.[6] Nor does NantWorks say that Dr. Polish is not qualified to speak to what a POSITA would have thought about the prior art. (*E.g.*, Polish Report, Appx. E at 23, 25-28, 38, 40, 42-43; *id.*, Appx. F at 31, 33-36, 46-47, 49-50, 251-54.)

For good reason—as described in Dr. Polish's report and CV, he earned his Ph.D. in Computer Science from Columbia University in 1993, and "[m]uch of [his] professional work over the past 35 years has been as a computer technology product developer." (Polish Report ¶¶ 6-7.) He also "founded and served as CTO and/or Principal Product Designer for multiple software companies," and has testified in dozens of cases. (Polish Report ¶ 4; Polish Appx 1.)

Dr. Polish's opinions regarding motivations to combine Parallel Kingdom and Turf Wars with Google Maps Mobile and the Korah prior art reference are technical opinions in line with Dr. Polish's career and credentials. (*See generally* Polish Report, Appx. E; Appx. F.) Dr. Polish's

---

funding.").)

[5] NantWorks is wrong. Dr. Polish has been qualified in and has testified in gaming patent cases, including for video game maker Nintendo. The Federal Circuit affirmed on the invalidity issue Dr. Polish testified about. *Creative Kingdoms v. Int'l Trade Com'n*, 588 F. App'x 993, 995 (Fed. Cir. 2014); *In the Matter of Certain Video Game Sys. and Wireless Controllers and Components Thereof*, No. 337-TA-770, 2013 WL 12410036, at *23-26 (Oct. 28, 2013).

[6] NantWorks' cited cases support Niantic or are plainly irrelevant. *Cover v. Windsor Surry*, No. 14-cv-05262-WHO, 2017 WL 9837932, at *17 (N.D. Cal. July 24, 2017) (indicating that expert *may* offer "a general opinion regarding consumer expectations for wood products, something he could plausibly have some knowledge of based on his experience and conversations with people in the industry"); *Pecover v. Elec. Arts.*, No. C 08-2820 VRW, 2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) (damages expert's retail sales expertise did not cover unrelated publishing issues); *Abaxis, v. Cepheid*, No. 10-cv-02840-LHK, 2012 WL 2979019, at *4 (N.D. Cal. July 19, 2012) (involving commercial success opinions); *Montera v. Premier Nutrition Corp.*, No. 16-cv-06980-RS, 2022 WL 1225031, at *4 (N.D. Cal. Apr. 26, 2022) (pertaining to chemical examination methodology developed solely for litigation).

opinions relate to product design—combining design elements of the Google Maps Mobile and Korah prior art into the Turf Wars and Parallel Kingdom software systems. These are technical opinions from the perspective of a POSITA, and they flow naturally from consideration of how a software developer POSITA (like Dr. Polish) would approach improving or combining these software applications based on the prior art. (*Compare, e.g.*, Polish Report, Appx. E at 10-19; Appx. F at 9-33 *with* Polish Report ¶¶ 2-7; Polish Appx 1.) That NantWorks disagrees a POSITA would be motivated to combine the applications in the way Dr. Polish describes is simply the subject of cross-examination, not exclusion.

### E. NantWorks' Attack on Dr. Polish's "Generic" and "Conventional" Opinion Fails Because NantWorks Did Not Attach the Relevant Analysis and Support

NantWorks argues that Dr. Polish did not provide "sufficient facts or data" to support his opinion that the claimed invention was generic and conventional. (Mot. at 8.) Nothing could be farther from the truth.

NantWorks simply failed to attach the relevant portions of Dr. Polish report, which spanned *hundreds of pages* of detailed analysis and evidence. To support his conclusion, Dr. Polish included: (1) a detailed prior art chronology of 170 years of history in a 54-page "Technology Background" section to show the patented ideas were well-known and conventional; (2) a 26-page "Overview of the '051 Patent" which included known and admitted pre-existing technologies; (3) 900 pages of invalidity claim charts showing each and every claim element was present in the prior art; and (4) a detailed Section 101 section. (Dkt. 246-5, Polish Report & Appendices.) NantWorks cannot claim ignorance of all this analysis and evidentiary support, especially since Dr. Polish confirmed during deposition that all of these sections support his conclusion regarding the generic and conventional nature of the '051 claims. (Chen Ex. 6 ("Polish Depo."), 128:13-129:17, 155:4-160:14, 161:6-17; Dkt. 246-5, Polish Report ¶¶ 231 ("As explained above…"), 244 (citing "Technology Background" and "Overview of the '051 Patent" sections of Polish report).) NantWorks' gripes about Dr. Polish's analysis in paragraphs 239 and 246 are nothing more than potential fodder for cross-examination, and NantWorks' mischaracterizations of Dr. Polish's deposition testimony are not a basis for exclusion.

## IV. CONCLUSION

NantWorks' *Daubert* should be denied in its entirety.

Dated: May 9, 2024

COOLEY LLP

*/s/ Heidi Keefe*
COOLEY LLP
HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
MATTHEW J. BRIGHAM (191428)
(mbrigham@cooley.com)
DENA CHEN (286452)
(dchen@cooley.com)
ALEXANDRA LEEPER (307310)
(aleeper@cooley.com)
PATRICK W. LAUPPE (322218)
(plauppe@cooley.com)
3175 Hanover Street
Palo Alto, California  94304-1130
Telephone:   (650) 843 5000
FACSIMILE:  (650) 849 7400

COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
101 California Street, 5th Floor
San Francisco, California 94111-5800
Telephone:   (415) 693 2000
Facsimile:    (415) 693 2222

*Attorneys for Defendant Niantic, Inc.*