Matthew K. Blackburn (SBN 261959)
MBlackburn@lewisroca.com
Evan E. Boetticher (SBN 274377)
EBoetticher@lewisroca.com
LEWIS ROCA ROTHGERBER CHRISTIE LLP
100 Pine Street, Suite 1750
San Francisco, CA 94111
Tel:    650.391.1380
Fax:   650.391.1395

*Attorneys for Plaintiffs and Counter-
    Defendants NANTWORKS, LLC
    and NANT HOLDINGS IP, LLC*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| NANTWORKS, LLC, AND NANT HOLDINGS IP, LLC.,<br><br>　　　　Plaintiffs and Counter-Defendants,<br><br>　　v.<br><br>NIANTIC, INC.,<br><br>　　　　Defendant and Counter-Claimant. | CASE NO. 3:20-cv-06262-LB<br><br>**PLAINTIFFS NANTWORKS, LLC AND NANT HOLDINGS IP, LLC OPPOSITION TO DEFENDANT NIANTIC'S MOTION TO EXCLUDE PORTIONS OF THE GOEDDE TESTIMONY**<br><br>DATE:　May 30, 2024<br>TIME:　9:30 a.m.<br>PLACE:　Zoom Conference<br>JUDGE:　Hon. Laurel BEELER |

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................. 1

    A. NantWorks and the Improved Computer Technology for Presenting Augmented Reality in the '051 Patent ................................................................. 1

    B. Niantic's Infringement of the '051 Patent with the Pokémon Go and Harry Potter: Wizards Unite Games ........................................................................... 3

    C. NantWorks Expert (Dr. Goedde) Properly Performed the Standard *George-Pacific* Reasonable Royalty Analysis .................................................................. 4

III. DEFENDANTS' *DAUBERT* MOTION TO EXCLUDE CERTAIN TESTIMONY FROM DR. GOEDDE SHOULD BE DENIED ................................................................ 5

    A. Dr. Goedde Properly Apportioned Revenue Between Infringing Game Modes and Non-Infringing Games Modes .......................................................... 5

    B. Dr. Goedde Properly Determined the Initial Baseline Royalty Rate From Five Comparable AR Licenses ............................................................................ 8

IV. CONCLUSION .............................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Adasa v. Avery Dennison*,
  55 F.4th 900 (Fed. Cir. 2020) .................................................................................................. 9

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ................................................................................................................ 7

*Ericsson, Inc. v. D-Link Sys., Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014) ............................................................................................... 9

*Finjan, Inc. v. Blue Coat Sys.*, Inc.,
  879 F.3d 1299, 1302 (Fed. Cir. 2018) ..................................................................................... 5

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
  318 F.Supp. 1116 (S.D.N.Y. 1970), modified, 446 F.2d 295 (2d Cir. 1971) ................. 1, 4, 7

*LaserDynamics Inc. v. Quanta Computer Inc.*,
  604 F.3d 51 (Fed. Cir. 2012) ................................................................................................... 6

*NetFuel, Inc. v. Cisco Sys., Inc.*,
  No. 5:18-cv-02352-EJD, 2020 WL 1274985 (N.D. Cal., Mar. 17, 2020) ............................ 6, 8

*Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*,
  752 F.3d 807 (9th Cir. 2014) .............................................................................................. 6, 10

*Quality Packaging, Inc. v. Snak Club*,
  No. 03-cv-5240-SI, 2005 WL 8177597 (N.D. Cal. Apr. 26, 2005) ..................................... 6, 10

*Summit 6, LLC v. Samsung Elecs Co., Ltd.*,
  802 F.3d 1283 (Fed. Cir. 2015) ............................................................................................... 6

*Uniloc USA Inc v Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011) ........................................................................................... 7, 9

*Vectura Ltd. v. GlaxoSmithKline LLC*,
  981 F.3d 1030 (Fed. Cir. 2020) ............................................................................................... 7

*Virnetx, Inc. v. Cisco, Inc.*,
  767 F.3d 1308 (Fed. Cir. 2014) ............................................................................................... 6

## I. INTRODUCTION

Defendant Niantic, Inc.'s ("Niantic") motion distorts the thorough and detailed reasonable royalty analysis performed by Plaintiffs NantWorks, LLC, and Nant Holdings IP, LLC's (collectively, "NantWorks") damages expert (Dr. Alan Goedde). Contrary to Niantic's assertions, Dr. Goedde performed a robust evaluation of the *Georgia-Pacific* and other relevant economic factors to determine the royalty rate that the Parties would have agreed to at a hypothetical negotiation for U.S. Patent No. 10,403,051 (the "'051 patent") before the first infringement of that patent.

Broadly speaking, the calculation of reasonable royalty patent damages involves determining a reasonable royalty rate and a royalty base, and calculating the reasonable royalty damages which is the product of the rate and the base. Dr. Goedde carefully and correctly followed the well-established *Georgia-Pacific* methodology for determining reasonable royalty damages.

Here, there was no established royalty for the '051 Patent. After considering in detail many publicly available licenses relating to augmented reality technologies, Dr. Goedde identified and relied on five comparable license agreements. Dr. Goedde adjusted the ultimate royalty base calculations to remove overseas usage of the Pokémon Go ("Pokémon Go") and Harry Potter: Wizards Unite ("Harry Potter") (collectively "Accused Products"). Dr. Goedde also apportioned the royalty base to reflect the value of the patented features versus unpatented features. Dr. Goedde explains every step of the analysis and the supporting evidence. Although Niantic may disagree with certain aspects of Dr. Goedde's analysis, the present motion raises classic issues of credibility and weight that are best left in the jury's capable hands (not admissibility). There simply is no basis to exclude any part of Dr. Goedde's proposed testimony.

The Court should deny Niantic's motion.

## II. BACKGROUND

### A. NantWorks and the Improved Computer Technology for Presenting Augmented Reality in the '051 Patent

Plaintiffs NantWorks, LLC, and Nant Holdings IP, LLC. (collectively "NantWorks") are

early innovators in the augmented reality ("AR") technology market, with numerous patents originating many years before the Accused Products were launched. Although it has not yet formally launched a commercial AR game, NantWorks is readying its own AR game, Myth Walker, for imminent launch. See https://mythwalker.com/ (last visited 5/9/2024). The '051 Patent is merely one of NantWorks's many AR patents, which addresses problems that had prevented wide-spread adoption of augmented reality.

The '051 Patent is directed to improved computer technology for presenting AR in a specific manner in order to make more realistic and engaging AR scenes. Historically, "augment reality platforms" were treated "as silos of virtual worlds or objects where each company develops their own hosting infrastructure to provide augmented reality services to users," which prevented "seamless[]" movement "from one augmented reality to another as naturally as moving from one room in a building to another." ECF 1-1 ('051 Patent) at 3:1–8; *see also id*. at 3:8–11 (prior "augmented reality objects" not treated "as distinct manageable objects in an infrastructure agonistic manner, where an augmented reality infrastructure can also be a pervasive utility.") These prior AR systems "simply forc[ed] individuals to select which features to experience," (*id.* at 3:25–27), and therefore failed to present "relevant augmented reality content" so that "features, real or virtual, of an augmented reality can interfere with each other." *Id*. at 3:15–24. Also, "[t]he known art fail[ed] to appreciate that interference among elements can occur based on properties or attributes of the elements." *Id*. at 3:27–29.

Claim 1 of the '051 Patent (from which all of the Asserted Claims directly or indirectly depend) describes an AR platform system with "an AR object repository" that stores "available AR objects" and "an AR server coupled with the AR object repository." ECF 1-1 ('051 Patent) at 21:49–51. This system operates in a specific manner to create a more realistic AR experience by considering the context of a situation and the ways that scene elements interfere with the virtual objects presented in that scene. ECF 245-8 (Turk Rebuttal) at ¶¶ 101, 312, 315.

The platform then obtains "digital data representative of an environment of an AR capable device" with "a device location of the AR capable device" and a "virtual element attribute." ECF 1-1 ('051 Patent) at 21:55–58. Then, "at least one context" is determined "related to the AR

capable device and pertinent to the environment based at least on the device location." *Id*. at 21:59–61. Next, the system "identif[ies] relevant AR objects from the AR object repository representing available AR objects corresponding to the at least one context." *Id*. at 21:62–64. Then, the system "determine[s] whether to alter presence of a relevant AR object based on at least the device location and the virtual element attribute." Id. at 21:65–67. Finally, the "relevant AR object" is rendered on "the AR capable device … according to its altered presence." *Id*. at 22:1–2. When operated in this manner, virtual objects are selected and displayed on the device based on the device surroundings with presentation of the virtual object enhanced or suppressed based on the particular situation and the device's location. *See, e.g.*, *id*. at Fig. 4, 17:50–53, 18:2–9, 18:18–21.

### B. Niantic's Infringement of the '051 Patent with the Pokémon Go and Harry Potter: Wizards Unite Games

Niantic has marketed and distributed at least two AR games that infringe the '051 Patent: Pokémon Go (launched in 2016) and Harry Potter: Wizards Unite (launched in 2019). Both of these games are location-based, AR, mobile games that depict virtual objects in scenes alongside of real-world elements from the physical world.

A central part of the Pokémon Go game is moving about in the real world, encountering Pokémon, and trying to capture them. ECF 248-4 at ¶¶ 19–20. There are three encounter modes in Pokémon Go: Non-AR mode, AR Classic mode, and AR Plus mode. *Id*. at ¶ 21. In an "AR Plus" encounter mode, a virtual Pokémon image is anchored to a specific real-world location and as players move closer or farther away from that Pokémon, the image changes. *Id*. at ¶ 22.

The Harry Potter game relied on similar game play where players could encounter virtual "foundables" by moving around in the real world. ECF 248-4 at ¶ 25. However, there were only two encounter modes in Harry Potter: Non-AR mode and AR Plus mode. *Id*. Again, in AR Plus mode, the appearance of the foundable image changed as the player moved the mobile device in the real world. *Id*. at ¶¶ 25–26.

Niantic's Accused Products infringe the '051 Patent by using AR Plus mode. ECF 248-4 at ¶ 38. Thus, in both of the Accused Products, the core game process involves this infringement. *Id*.

NANTWORKS'S OPP TO NIANTIC'S MOT TO EXCLUDE
REGARD GOEDDE TESTIMONY                                3                                CASE NO. 3:20-cv-06262-LB

at ¶¶ 24, 27.

### C. NantWorks Expert (Dr. Goedde) Properly Performed the Standard *George-Pacific* Reasonable Royalty Analysis

Dr. Goedde is an experienced expert witness who has testified in dozens of cases in the past five years. ECF 248-4, 24–26 (Tab 1). He has master's and doctorate degrees in economics from Duke University. *Id.* at ¶ 2. In addition to his educational pedigree, Dr. Goedde has practical experience from working for over thirty years in financial and economic analysis. *Id.*

NantWorks retained Dr. Goedde to testify on the damages attributable to Niantic's ongoing infringement of the '051 Patent. ECF 248-4 at ¶¶ 3–4. Based on a detailed analysis, Dr. Goedde determines that the reasonable royalty damages for the period September 8, 2020 through December 31, 2023 totals ███████████████.[1] *Id.* at ¶ 5. Dr. Goedde arrived at these damages by carefully and correctly following the well-established procedure set forth in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970), modified, 446 F.2d 295 (2d Cir. 1971) (suggesting fifteen factors to be considered as a guidance in developing a reasonable royalty). *Id.* at ¶¶ 30–31.

NantWorks has never licensed the '051 Patent, and there is no established royalty for that patent. ECF 248-4 at ¶ 35. Accordingly, Dr. Goedde searched for comparable license agreements and was able to locate five AR license agreements for similar AR technology with a median base royalty rate of 5% of net revenues. *Id.*; *see also id.*, 28, 32–40 (Tab 2).

Dr. Goedde then assessed the *Georgia-Pacific* factors to determine if any adjustments should be made to that base royalty rate. ECF 248-4, at ¶ 36. After this analysis, including especially considering *Georgia-Pacific* factors 1–3, 5, 6, 9–11, Dr. Goedde determined the royalty rate for the '051 Patent should be 5%. *Id.* at ¶¶ 35–44 and 46.

Next, Dr. Goedde determined the revenue generated by the Accused Products from September 8, 2020 through December 31, 2023 and apportioned that revenue to reflect that the Accused Products contained both infringing and non-infringing encounter modes. ECF 248-4 at

---

[1] Because of Niantic's ongoing infringement, the damages amount continues to increase each day. Niantic has not updated its financial information produced in this case to include final revenue numbers for 2023 or data for 2024.

¶¶ 45, 47–48. Dr. Goedde used ⅓ of the revenue for Pokémon Go and ½ of the revenue for Harry Potter. *Id.* at ¶¶ 47–48. Dr. Goedde further discounted the revenue base to exclude revenue attributable to use of the Accused Products outside of the United States. *Id.* at ¶ 49. This resulted in a total royalty basis for both Accused Products of ▓▓▓▓▓ from September 8, 2020 through December 31, 2023 and reasonable royalty damages totaling ▓▓▓▓▓:

|  | U.S. Revenue Base (Un-apportioned) | Apportioned Revenue Base | Reasonable Royalty Damages |
|---|---|---|---|
| Pokémon Go | ▓ | ▓ | ▓ |
| Harry Potter | ▓ | ▓ | ▓ |
| **Totals** | ▓ | ▓ | ▓ |

ECF 248-4 at 29; Blackburn Decl., Ex. 1 (corrected schedule 2).

### III. DEFENDANT'S DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY FROM DR. GOEDDE SHOULD BE DENIED

#### A. Dr. Goedde Properly Apportioned Revenue Between Infringing Game Modes and Non-Infringing Games Modes

Niantic argues (Mot. 7) that Dr. Goedde failed to apportion revenues in the royalty base used in the reasonable royalty calculation between the infringing encounter mode (AR Plus) and the non-accused encounter modes. That argument is simply false. As summarized above and explained in detail in Dr. Goedde's report, Dr. Goedde specifically adjusted the royalty base in order to isolate the infringing AR Plus encounter mode from other encounter modes. In Pokémon Go, there are three possible encounter modes (Non-AR mode, AR Classic mode, and AR Plus mode). ECF 248-4 at ¶ 21. In Harry Potter: Wizards Unite, there were two possible encounter modes (Non-AR mode, and AR Plus mode). *Id.* at ¶ 25. Dr. Goedde apportioned the revenues by multiplying the Pokémon Go revenues by ⅓ (one infringing mode out of three total modes) and by multiplying the Harry Potter revenues by ½ (one infringing mode out of two total modes). *Compare Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1302, 1309–11 (Fed. Cir. 2018) (cited Mot., 7) (remanding case to district court in order to re-determine damages where expert failed to perform any apportionment of the royalty base "to reflect the value of the patented

technology compared to the value of the unpatented elements.") Because Dr. Goedde's methodology is reasonable and his data or evidence is sufficiently tied to the facts of the case, the testimony may not be excluded. *See Summit 6, LLC v. Samsung Elecs Co., Ltd.*, 802 F.3d 1283, 1297–98 (Fed. Cir. 2015) (affirming district court's decision to admit damages expert testimony that was based on the expert's estimation of "the percentage of camera uses who used the camera to perform the infringing methods rather than for other purposes.")

The reasonable royalty analysis necessarily involves some "approximation and uncertainty." *See VirnetX, Inc. v. Cisco, Inc.*, 767 F.3d 1308, 1328, 1330 (Fed. Cir. 2014) (citations omitted). Nonetheless, Niantic argues that Dr. Goedde's apportionment methodology was not sound enough to be admissible. Mot. 7 (citing *NetFuel, Inc. v. Cisco Sys., Inc.*, No. 5:18-cv-02352-EJD, 2020 WL 1274985, at *7 (N.D. Cal., Mar. 17, 2020)). However, in *NetFuel* the court's decision turned on the black box or unexplained nature of the expert's opinion. *NetFuel*, 2020 WL 1274985, *7. The expert had failed to provide any explanation of how the apportionment percentage being applied was derived. *Id*. On that basis, the court excluded the expert's opinions because the expert "failed to provide the methodology underlying his apportionment amount or [to] explain how he arrived at that figure based on the facts of this case." *Id*.; *see also LaserDynamics Inc. v. Quanta Computer Inc.*, 604 F.3d 51, 69 (Fed. Cir. 2012) (criticizing use of apportionment percentage "plucked out of thin area.") Here, Dr. Goedde's methodology is specified in detail, and goes well beyond the detail provided in *NetFuel*.

Further, any alleged weaknesses in the factual basis of underlying Dr. Goedde's opinions might bear on the weight of the evidence, but cannot justify exclusion of this relevant evidence. *See, e.g.*, *Quality Packaging, Inc. v. Snak Club*, No. 03-cv-5240-SI, 2005 WL 8177597, at *5 (N.D. Cal. Apr. 26, 2005) (overruling unopposed objection that expert report was not based on sufficient facts and data, and noting that weakness in the factual basis generally bears on the weight of the evidence, not the admissibility); *see also Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 814 (9th Cir. 2014) ("[C]hallenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge."). The proper remedy, if any, is not exclusion, but rather is "[v]igorous cross-examination, presentation of contrary evidence, and

1  careful instruction on the burden of proof." *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S.
2  579, 596 (1993).
3    Niantic also relies on *Uniloc USA Inc v Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011),
4  which holds that an expert may not rely on a "25% rule of thumb" to arrive at an initial baseline
5  royalty rate. *Id*. at 1315. *Uniloc* is not relevant here because it does not discuss the required
6  methodology to use when apportioning a royalty base between patented and non-patented
7  features.² Dr. Goede did not rely upon a "rule of thumb" to come to his 5% royalty rate, and
8  instead based it on the royalty rates from similar, comparable licenses and a full *Georgia-Pacific*
9  analysis.
10   Niantic chastises Dr. Goedde for not using "catch" data provided by Niantic relating to the
11 three different encounter modes in the Pokémon Go game.³ Mot. 8. The catch data includes
12 (1) ████████████████████████████████████████████ (Ex. 2 at
13 NIA_00151611 (Section 1)), (2) ████████████████████████████████████
14 ████ (*Id*. (Section 2)), and (3) ████████████████████████████████████
15 ████████████████████████████ *Id*. (Section 3).
16   There are a number of problems with Niantic's "catch" data. First, Niantic cites no
17 testimony linking catches to encounter mode usage. There is simply no evidence in this record to
18 show that the number of catches in a given encounter mode is a reliable and accurate estimation
19 for that encounter mode's usage.⁴ Second, using such catch data to estimate usage of AR Plus
20 mode is "inaccurate because infringement occurs at the encounter level" prior to any catch
21 occurring. Ex. 4 (Goedde Depo.) at Tr. 138:21–139:5; *see also id*. at Tr. 150:25–151:10.
22 The '051 Patent is not directed to a method for catching Pokémon. Ex. 3 (Rowe Depo) at
23 Tr. 121:18–25. Third, Dr. Goedde expressed concerns about the reliability of ████

---

² In fact, reasonable royalty opinions may be admitted into evidence without an apportioned royalty base. *See Vectura Ltd. v. GlaxoSmithKline LLC*, 981 F.3d 1030, 1040 (Fed. Cir. 2020) ("[W]hen a sufficiently comparable license is used as the basis for determining the appropriate royalty, further apportionment may not necessarily be required").
³ Niantic did not produce any similar "catch" data for the Harry Potter game.
⁴ Whether a Pokémon is caught or captured in an encounter is highly variable. The player's level, the Pokémon type, the type of throw used, and other environmental factors will alter the catch frequency.

1 ███████████████████████████████████████████████████████████. *Id.*
2 at Tr. 143:16–145:24, 150:12–20.[5]

3     Niantic misleadingly relies on a ████████████████████████████████
4 ████████████████████████████, but AR Plus mode had not yet been launched as of the
5 date that study was published. *Id.* (citing ECF 428-6 at ¶ 148); Ex. 3 (Rowe Depo) at Tr. 145:12–
6 146:5. There is nothing to tie that data to the usage of AR Plus during the damages period year
7 later.

8     If there is a problem here, it is of Niantic's creation. Pokémon Go is and Harry Potter was
9 "free-to-play," where ███████████████████████████████████████████████████
10 ████████████████████████████████████████████████████████████████████
11 ██████████████████████████████████ Ex. 3 (Rowe Depo) at Tr. 118:21–120:17.
12 ████████████████████████████████████████████████████████████████████
13 ████████ Because of the absence of better information, Dr. Goedde's methodology is reasonable
14 and sufficient.

15     Accordingly, there is no basis to exclude Dr. Goedde's opinions apportioning the royalty
16 base by 33% for Pokémon Go and 50% for Harry Potter.

17     **B.    Dr. Goedde Properly Determined the Initial Baseline Royalty Rate From Five
18          Comparable AR Licenses**

19     As part of his reasonable royalty damages analysis, Dr. Goedde searched for and located
20 various potentially comparable license agreements from which he determined a baseline royalty
21 rate. ECF 248-4 at ¶¶ 35–36. For each license, Dr. Goedde considered the parties involved in the
22 transaction, the licensed property, the high and low royalty rates, the agreement date, the royalty
23 base use, the exclusivity of the license, as well as other compensation details. *Id.* at 28, 32–40
24 (Tab 2). For example, one license relates to patent-pending proprietary software that enabled

---

[5] Niantic's expert (Ms. Rowe) relies on ████████████████████████████████████
████████████████████████████████████████████████ Ex. 3 (Rowe Depo) at Tr. 81:15–
84:10. This is grounds for excluding Ms. Rowe's opinion. *NetFuel*, 2020 WL 1274985, *7
(excluding "black box" expert where the methodology and facts and data for opinion are not
known).

1  Internet Virtual Marketplaces (an AR-based sales channel). *Id*. at 32 (Tab 2). Another license
2  relates to patent-pending AR software that enabled a web-based hosted software platform. *Id*. at 37
3  (Tab 2). Yet another license involved patented software for a virtual shooting content. *Id*. at 38–
4  39. (Tab 2). Accordingly, in the absence of actual licensing history for the '051 Patent,
5  Dr. Goedde's royalty rate analysis is sound and should be admitted.

6  Niantic criticizes (Mot. 9) Dr. Goedde for finding these licenses in a database using a
7  "search string" for "augmented reality," but that description alone is an over-simplification, does
8  not capture what Dr. Goedde actually did, and ignores Dr. Goedde's years of experience as an
9  economist in conducting these types of searches. By individually considering each license
10 agreement and their specific similarities and differences with respect to the '051 Patent and its
11 technology, Dr. Goedde met his burden to show comparability, which again does not require
12 exactitude. *See Virnetx*, 767 F.3d at 1328 (reasonable royalty analysis necessarily involves some
13 "approximation and uncertainty"). Dr. Goedde also relied on ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
14 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
15 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Ex. 4 (Goedde Depo) at Tr. 46:2–21, 48:2–13; *see also* Ex. 3
16 (Rowe Depo) at Tr. 155:15–161:13. Dr. Turk also provided testimony about the technological
17 comparability of the licenses relied on by Dr. Goedde. Ex. 5 (Turk 3/20/24 Depo) at Tr. 199:22–
18 204:14. At best, any perceived differences between the '051 Patent and the technology licensed in
19 the comparable licenses might go to the weight of the evidence and not admissibility. *See*
20 *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014).

21 Niantic's reliance on *Uniloc USA v. Microsoft*, 632 F.3d 1292 (Fed. Cir. 2011) and *Adasa*
22 *v. Avery Dennison*, 55 F.4th 900 (Fed. Cir. 2020) is misplaced. As discussed above, *Uniloc*
23 awarded Microsoft a new trial on damages because the patent owner's expert relied on a 25% rule
24 of thumb to determine an initial base line royalty rate. 632 F.3d at 1317–18. *Uniloc* simply does
25 not address how sufficiently comparable a license must be in order to figure into the reasonable
26 royalty damages analysis. *Adasa* affirmed the exclusion of expert testimony where the expert had
27 failed to account for differences in the technologies and the economic circumstances of the
28 contracting parties. 55 F.4th at 915. Some of the allegedly comparable licenses "involved

hundreds or thousands of patents that spanned a broad range of technologies. *Id*. The Federal Circuit found that because the expert had not undertaken "any meaningful comparison" of the asserted patent and the license patents, the opinions were properly excluded. *Id*. Here, as summarized above, Dr. Goedde did a comparability analysis.

Questions as to whether Dr. Goedde's analysis demonstrates that the licenses are comparable in their terms or their technology go to the weight of the evidence for the jury to decide, not to questions of admissibility justifying exclusion. *See Quality Packaging,* 2005 WL 8177597, at *5; *see also Pyramid Techs.,* 752 F.3d at 814. Accordingly, there is no basis to exclude Dr. Goedde's opinions regarding the five comparable licenses and their royalty rates

## IV.   CONCLUSION

For the foregoing reasons, this Court should deny both aspects of Niantic's motion to exclude certain of Dr. Goedde's reasonable royalty opinions.

Respectfully submitted,

DATED: May 9, 2024                LEWIS ROCA ROTHGERBER CHRISTIE LLP

By: */s/ Matthew K. Blackburn*
   Matthew K. Blackburn
   Evan E. Boetticher

*Attorneys for Plaintiffs NANTWORKS, LLC and NANT HOLDINGS IP, LLC*