Matthew K. Blackburn (SBN 261959)
MBlackburn@lewisroca.com
Evan E. Boetticher (SBN 274377)
EBoetticher@lewisroca.com
LEWIS ROCA ROTHGERBER CHRISTIE LLP
100 Pine Street, Suite 1750
San Francisco, CA 94111
Tel: 650.391.1380
Fax: 650.391.1395

*Attorneys for Plaintiffs and Counter-Defendants NANTWORKS, LLC and NANT HOLDINGS IP, LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

NANTWORKS, LLC, AND NANT HOLDINGS IP, LLC.,

Plaintiffs and Counter-Defendants,

v.

NIANTIC, INC.,

Defendant and Counter-Claimant.

CASE NO. 3:20-cv-06262-LB

**PLAINTIFFS'S NANTWORKS, LLC AND NANT HOLDINGS IP, LLC REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF DEFENDANT'S EXPERTS JULIA ROWE, NATHANIEL POLISH, AND UNDER FED. R. EVID. 702 AND DAUBERT**

DATE: MAY 30, 2024
TIME: 9:30 a.m.
PLACE: Courtroom 15B
JUDGE: Hon. Laurel BEELER

# TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES ..... ii

I. INTRODUCTION ..... 1

II. NIANTIC'S ARGUMENTS AGAINST EXCLUSION OF MS. ROWE'S OPINIONS ARE UNAVAILING ..... 1

A. Ms. Rowe's Proposed Testimony About Alleged Non-Infringing Alternatives Is An Improper Attempt to Regurgitate Untimely and Improper Expert Testimony of Others ..... 1

B. Ms. Rowe Cannot Rely on NIA_00151611 Because She Did Not Explain Why [REDACTED] Data Is Relevant to Apportionment and Because She Could Not Show the Underlying [REDACTED] Data Was Representative ..... 5

C. Ms. Rowe's Testimony Regarding the Litigation Settlement Should Be Excluded Because She Failed to Show It Is Economically Comparable and to Adjust Her Lump Sum Damages Value Based on Factual Differences ..... 7

III. DR. POLISH IS NOT QUALIFIED TO TESTIFY ABOUT GAME MARKETING ISSUES BECAUSE HE LACKS THE NECESSARY EXPERTISE ..... 9

IV. DR. POLISH'S ALLEGATIONS THAT THE '051 PATENT INVENTION IS "GENERIC" AND "CONVENTIONAL" ARE NOT PROPERLY SUPPORTED AND SHOULD BE EXCLUDED ..... 10

V. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Acceleration Bay LLC v. Activision Blizzard Inc.*, No. 1:16-cv-00453-RGA, 2019 WL 4194060 (D. Del. Sept. 4, 2019) ........ 2

*Apple Inc. v. Motorola*, Inc. 757 F.3d 1286 (Fed. Cir. 2014) ........ 4

*Asetek Danmark A/S v CoolIT Sys. Inc.*, No. 19-cv-410-EMC, 2022 WL 21306657 (N.D. Cal. Oct. 4, 2022) ........ 3

*AVM Techs., LLC v. Intel Corp.*, 927 F. Supp. 2d 139 (D. Del. 2013) ........ 8

*Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018) ........ 11

*Conceptus, Inc. v. Hologic, Inc.*, 771 F. Supp. 2d 1164 (N.D. Cal. 2010) ........ 3

*Cooper v. Brown*, 510 F.3d 870 (9th Cir. 2007) ........ 9

*Core Wireless Licensing v. Apple, Inc.* No. 15-cv-5008 NC, 2016 WL 8231157 (E.D. Tex. Nov. 18, 2016) ........ 4

*Edwards Lifesciences Corp. v. Meril Life Scis. Pvt. Ltd.*, No. 19-cv-6593-HSG, 2022 WL 254348 (N.D. Cal. Jan. 27, 2022) ........ 9

*Elbit Sys. Land & C4I v. Hughes Network Sys.*, 927 F.3d 1292 (Fed. Cir. 2019) ........ 8

*Ericsson v. D-Link Systems*, 773 F.3d 1201 (Fed. Cir. 2014) ........ 8

*General Elec. Co. v. Joiner*, 522 U.S. 136 (1997) ........ 11

*Good Tech. Corp. v. Mobileiron, Inc.*, No: 5:12-cv-5826-PSQ, 2015 WL 4197554 (N.D. Cal. Jul. 10, 2015) ........ 4

*GPNE Corp. v. Apple, Inc.*, No. 12-cv-2885-LHK, 2014 WL 1494247 (N.D. Cal. Apr. 16, 2014) ........ 9, 11

*High Sierra Hikers Assn v. Weingardt*, 521 F. Supp. 2d 1065 (N.D. Cal. 2007) ........ 6

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1991) ........ 6

*LaserDynamics, Inc. v. Quanta Comp., Inc.*, 694 F.3d 51 (Fed. Cir. 2012) ........ 7

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Plexxikon Inc. v. Novartis Pharms. Corp.*, No. 4:17-cv-4405-HSG, 2021 WL 97544 (N.D. Cal. Jan. 12, 2021) ........ 7, 9

*Prism Techns. v. Sprint Spectrum*, 849 F.3d 1360 (Fed. Cir. 2017) ........ 8

*ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010) ........ 7

*Sprint Commc'ns Co. v. Comcast IP Holdings, LLC*, No. 12-cv-1013, 2015 WL 456154 (D. Del. Jan. 30, 2015) ........ 7, 9

*Synopsys, Inc. v. Siemens Industry Software, Inc.*, No. 20-cv-4161-WHO, 2024 WL 1683637 (N.D. Cal. Apr. 17, 2024) ........ 6

*Viatech Techs. v. Adobe*, No. 20-cv-358-RGA, 2023 WL 5975219 (D. Del. Sept. 14, 2023) ........ 7

*Webasto Thermo & Comfort N Am., Inc. v. Bes Top, Inc.*, No. 16-cv-13456, 2019 WL 3334563 (E.D. Mich. July 25, 2019) ........ 3

*Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F. Supp. 3d 466 (D. Del. 2019) ........ 7

**Rules**

Fed. R. Civ. P. 26(a)(2) ........ 3, 6

Fed. R. Evid. 403 ........ 9

Fed. R. Evid. 701 ........ 3

Fed. R. Evid. 702 ........ 9

## I. INTRODUCTION

Niantic's opposition fails to rebut NantWorks's showings that the Court should exclude certain testimony from Ms. Rowe and Dr. Polish. As to Ms. Rowe's noninfringing alternatives testimony, the Court should not permit her to regurgitate the opinion testimony of a lay witness and of a different expert witness, both of whom failed to timely submit expert reports. As to Ms. Rowe's apportionment testimony based on NIA_00151611, Ms. Rowe has not shown why [REDACTED] is a proper metric. Even if she had done so, her testimony would be unreliable because the document she relies on contains [REDACTED] and she fails to testify as to whether the [REDACTED]. As to Ms. Rowe's lump sum royalty amount based on a settlement, Ms. Rowe also fails to show that the settlement is economically comparable, and further fails to adjust her lump sum damages to account for factual differences, rendering her testimony either irrelevant or prejudicial.

Aspects of Dr. Polish's testimony likewise should be excluded. Niantic plans to have its computer science technical expert offer opinions on subjects for which he does not qualify as an expert. Dr. Polish is no expert on marketing issues, e.g., game players preferences. Finally, Dr. Polish should not be permitted to testify that the '051 Patent invention is "generic" or "conventional" when his expert report fails to provide adequate factual bases for these opinions.

Accordingly, the Court should grant Nantworks's motion to exclude the specified portions of Ms. Rowe's and Dr. Polish's testimony.

## II. NIANTIC'S ARGUMENTS AGAINST EXCLUSION OF MS. ROWE'S OPINIONS ARE UNAVAILING

### A. Ms. Rowe's Proposed Testimony About Alleged Non-Infringing Alternatives Is An Improper Attempt to Regurgitate Untimely and Improper Expert Testimony of Others

Niantic's opposition (ECF 260, "Opp.") confirms that it is necessary to exclude Ms. Rowe's proposed testimony on noninfringing alternatives; an expert may not regurgitate the expert testimony of others (especially as here, where those others have not submitted expert reports with the underlying opinions). First, Niantic does not dispute that its alleged product

redesign (somehow [REDACTED]) was nonexistent at the start of the infringement period in 2019 and has never actually been implemented. Although Niantic argues [REDACTED] would have been easy (Opp., 1:20–24), none of Niantic's technical expert reports establish that Niantic had the ability to implement such an alternative during the accounting period and none explain how this change allegedly would have been accomplished.

Second, Niantic fails to identify any proposed testimony from Ms. Rowe showing that this alleged redesign (i) would not infringe the '051 Patent claims or (ii) would have been acceptable to users of the accused products. For example, Ms. Rowe assumes that [REDACTED] would have been noninfringing (ECF 252-3 at ¶ 106), but no one (not Ms. Rowe, not Dr. Balakrishnan, and not Mr. Jeffery) provides that analysis. There simply is nothing to show that a version of Pokémon Go [REDACTED]. Ms. Rowe also assumes that the benefit of the '051 Patent is limited based on her assertion that [REDACTED]. ECF 252-4 (Rowe Depo.) at Tr. 58:1–12. Because Ms. Rowe's opinions are based on speculation and conclusory assertions, they should be excluded. See *Acceleration Bay LLC v. Activision Blizzard Inc.*, No. 1:16-cv-00453-RGA, 2019 WL 4194060, at *8 (D. Del. Sept. 4, 2019) (excluding damages expert's assumption that earlier versions of a product are non-infringing alternatives and any damages conclusions stemming from that assumption because "none of its technical experts have opined that the earlier games are non-infringing" and "[a] damages[ ] expert's assumption is not sufficient to support a damages opinion based on a particular non-infringing alternative").

Third, Niantic incorrectly suggests that Ms. Rowe may rely on a Niantic employee (Mr. Jeffery) and a Niantic expert witness (Dr. Balakrishnan) to provide a basis for the noninfringing alternatives testimony. Opp., 1:24–2:18 (referring to Mr. Jeffery and Dr. Balakrishnan). For example, Ms. Rowe relies on Mr. Jeffery as a source for [REDACTED] ECF 252-4 (Rowe Depo.) at Tr. 77:10–14 and Tr. 61:15–17; ECF 252-3 (Rowe Damages Rebuttal Rpt.) at ¶¶ 106, 108. However, Mr. Jeffery is a lay witness and not an expert

witness, and may not give expert testimony (especially where these opinions were not timely disclosed). Fed. R. Evid. 701; Fed. R. Civ. P. 26(a)(2).[1]

Nor can Ms. Rowe rely on Dr. Balakrishnan to identify what is a non-infringing alternative,[2] because Niantic failed to provide an expert report for Dr. Balakrishnan stating these opinions or providing the alleged basis therefor. Fed. R. Civ. P. 26(a)(2).[3]

Fourth, Ms. Rowe cannot simply be a "mouthpiece" for undisclosed expert testimony from Mr. Jeffery or Dr. Balakrishnan. *See, e.g., Asetek Danmark A/S v CoolIT Sys. Inc.*, No. 19-cv-410-EMC, 2022 WL 21306657, *31–*32 (N.D. Cal. Oct. 4, 2022) (granting motion to exclude testimony about alleged availability and acceptability of noninfringing alternatives because expert "does not provide any analysis into the acceptability of the redesign beyond relaying [a fact witnesses] opinion that redesigns would be acceptable and "would not require any customer review." ); *Webasto Thermo & Comfort N Am., Inc. v. Bes Top, Inc.,* No. 16-cv-13456, 2019 WL 3334563, at *5 (E.D. Mich. July 25, 2019) (holding expert's opinion is "wholly inadmissible under *Daubert*" because "entire opinion on the alleged non-infringing design around is 100% a regurgitation of what he was told in conversation by [defendant's] Director of Engineering and a lay witness in this case."); *Conceptus, Inc. v. Hologic, Inc.*, 771 F. Supp. 2d 1164, 1179 (N.D. Cal. 2010) (granting summary judgment that there were no available non-infringing alternatives because defendants offered only "a portion of the unsworn report of its own expert that relies exclusively on private conversations with [defendant's] personnel," and not any documents or sworn testimony demonstrating availability). Any testimony on non-infringing alternatives based on Mr. Jeffery's or Dr. Balakrishnan's private conversations with Ms. Rowe would simply be her repeating opinions that she is unqualified to provide herself.

---

[1] Niantic argues that Mr. Jeffery should be permitted to testify about expert matters because he was deposed "about AR Plus and the accused features and products." Opp., 4 n.2. However, the taking of a fact witness's deposition does not entitle that lay witness to provide expert testimony.

[2] Ms. Rowe admits she is not qualified to [REDACTED]. ECF 252-4 (Rowe Depo.) at Tr. 13:2–4.

[3] Niantic argues that Dr. Balakrishnan should be permitted to testify about non-infringing alternatives because he provided an expert report on other subjects and was deposed. Opp., 4 n.2. By failing to give notice that Dr. Balakrishan would be a non-infringing alternative expert witness, Niantic prevented NantWorks from examining Dr. Balakrishan on these opinions. Nor has Niantic cited precedent excusing its failure to timely provide an expert report for these opinions.

Niantic's reliance on *Apple v. Motorola*, *Core Wireless Licensing v. Apple*, and *Good Technology v. Mobileiron*, is entirely misplaced as these cases are readily distinguished. In *Apple v. Motorola*, the Federal Circuit overturned a district court's exclusion of damages expert testimony for the "sole reason" that the damages expert relied on the underlying opinion of a technical expert. 757 F.3d 1286, 1320–21 (Fed. Cir. 2014). In *Core Wireless*, the district court denied without prejudice a motion to exclude a damages expert witness whose testimony "relies heavily on the opinions" of two other expert witnesses "that non-infringing alternatives exist for each patent" and admonished that the damages expert's testimony would only be admitted if a satisfactory foundation was provided. No. 15-cv-5008 NC, 2016 WL 8231157, *3 (E.D. Tex. Nov. 18, 2016). Here, Niantic's damages expert relies on expert testimony from an unqualified lay witness and neither underlying source timely provided an expert report as required. Because of this, Niantic simply cannot lay the proper foundation for Ms. Rowe's proposed testimony.[4]

In *Good Technology*, the district court found no basis to exclude an expert witness's testimony on non-infringing alternatives where the witness consulted with a corporate employee because the expert also "conduct[ed] extensive independent analysis based on his own experience in the industry." No: 5:12-cv-5826-PSQ, 2015 WL 4197554, *4 (N.D. Cal. Jul. 10, 2015). Here, however, Ms. Rowe failed to perform any independent analysis to support the proposed non-infringing alternatives testimony and is functioning as a mouthpiece for out-of-court statements.

Without the premise that Niantic's alleged non-infringing alternatives would have been available, technically feasible, and commercially acceptable, Ms. Rowe's testimony related thereto is irrelevant, improper, and should be excluded.[5]

---

[4] Niantic argues that Ms. Rowe's testimony on non-infringing alternatives should be admitted subject to cross-examination by NantWorks. Opp. 3:7–11. Unfortunately, the underlying opinions of Mr. Jeffery and Dr. Balakrishnan are not admissible because they were not timely disclosed and any opinion offered by Ms. Rowe would not be hers and therefore resistant to cross-examination. Accordingly, there can be no foundation for Ms. Rowe's testimony relying thereon.

[5] Ms. Rowe suggests that a document (NIA_00151611) which she mis-interprets as showing [redacted]. ECF 252-3 at ¶ 107. As discussed herein, that document is not sufficiently trustworthy and Ms. Rowe has not explained why it is reliable to show that the proposed redesign alternative was available, was technically feasible, or commercially acceptable.

**B. Ms. Rowe Cannot Rely on NIA_00151611 Because She Did Not Explain Why [REDACTED] Data Is Relevant to Apportionment and Because She Could Not Show the Underlying [REDACTED] Data Was Representative**

Niantic's damages expert repeatedly relies on a document that she has not shown to be relevant to any issue in this litigation. Mot., 3:9–11. Ms. Rowe says the document in question allows her to estimate [REDACTED] [REDACTED]. ECF 252-3 at ¶ 107. However, as should be clear by now, the '051 Patent does not relate to catching Pokémon. There is nothing except the *ipse dixit* of Ms. Rowe to link [REDACTED] [REDACTED]. This testimony, therefore, is irrelevant and is not sufficiently tied to the facts and should be excluded.

Another problem relates to the data in [REDACTED] of the document, which Ms. Rowe uses to [REDACTED] (meaning that it is only a small part or quantity of the entire data and is intended to show what the whole may be like). The document reports [REDACTED], which corresponds to over [REDACTED]. However, [REDACTED] [REDACTED]. Ms. Rowe also provides no information linking [REDACTED]. However, we know that Pokémon are not always captured in an encounter[6] and therefore there is not a one-to-one correspondence between [REDACTED]. Further, Ms. Rowe was unable to answer basic questions about the document, which prevents substantive cross-examination of her on the document. ECF 252-4 (Rowe Depo.) at Tr. 81:7–9, 85:11–18, 86:17–87:8, 87:10–18, 149:13–18, and 151:16–152:3. We do not know whether this was [REDACTED] [REDACTED]. Ms. Rowe does not describe any independent checks conducted to ensure the representativeness of the data. Ms. Rowe cannot provide a "known or potential rate of error" regarding this [REDACTED]. *Kumho Tire Co. v.*

[6] A Pokémon can flee or leave an encounter in the Pokémon Go game, which would result in an encounter but not a catch.

*Carmichael*, 526 U.S. 137, 145, 151 (1991); *cf. High Sierra Hikers Assn v. Weingardt*, 521 F. Supp. 2d 1065, 1075 (N.D. Cal. 2007) (applying the following factors to determine survey reliability: "(1) that a proper 'universe' was examined and a representative sample was chosen; (2) that the persons conducting the survey were experts; (3) that the data were properly gathered and accurately reported; and (4) that the sample design, the questionnaires and interviewers, as well as the respondents, were unaware of the purpose of the study.") No safeguards were employed by Ms. Rowe to ensure the reliability of [REDACTED] data. Accordingly, Ms. Rowe's conclusions based on the suspect data are unreliable and speculative; she simply does not know whether [REDACTED] data is representative of anything.

Niantic attempts to deflect and obscure without addressing these glaring deficiencies. First, Niantic says that Ms. Rowe may rely on the document because NantWorks's expert considered the same document. Opp., 4:11–24. Niantic, however, fails to cite any precedent to supports this argument and NantWorks is aware of none. Second, Niantic says NantWorks's "gripes" can be addressed by cross-examination and that unnamed Niantic lay witness(es) may be brought forward at trial to sponsor the underlying document. Opp. 5:2–5. None of these witnesses can supply the required expert testimony needed to establish that the underlying document is reliable. Fed. R. Civ. P. 26(a)(2).

Niantic's reliance on *Synopsys v. Siemens Industry Software,* No. 20-cv-4161-WHO, 2024 WL 1683637 (N.D. Cal. Apr. 17, 2024) is misplaced. There, the court permitted an expert (Wolf) to rely on the trial testimony of another expert (Melvin) about how prior art software operated, but did so because the underlying expert witness would be subject to cross-examination. *Synopsys*, 2024 WL 1683637, *8. Here, no expert witness has been proffered by Niantic to explain the methodology used to sample the data and why it allegedly is reliable or even relevant to this case.

Accordingly, Ms. Rowe's testimony relating to NIA_00151611 should be excluded because it is unreliable, improper, and irrelevant.

**C. Ms. Rowe's Testimony Regarding the Litigation Settlement Should Be Excluded Because She Failed to Show It Is Economically Comparable and to Adjust Her Lump Sum Damages Value Based on Factual Differences**

Another problem with Ms. Rowe's testimony relates to her reliance on a litigation settlement without showing that the settlement is relevant to the value of the '051 Patent technology and, even if it is relevant, that relevance is outweighed by the risk of prejudice. Mot. 4:14–17.

Courts often exclude testimony regarding settlements that are either technologically or economically non-comparable. See, e.g., *LaserDynamics, Inc. v. Quanta Comp., Inc.*, 694 F.3d 51, 77–78 (Fed. Cir. 2012) ("The propriety of using prior settlement agreements to prove the amount of a reasonable royalty is questionable."); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 873 (Fed. Cir. 2010) (district court erred by considering certain licenses and adjusting "upward" the reasonable royalty rate "without any factual findings that accounted for the technological and economic differences between those licenses"); *Plexxikon Inc. v. Novartis Pharms. Corp.*, No. 4:17-cv-4405-HSG, 2021 WL 97544, at *7 (N.D. Cal. Jan. 12, 2021) (excluding expert witness testimony based on three settlement agreements because: (1) the settlements "do not involve the asserted patents," (2) "were entered into early in the cases" and "to avoid litigation," (3) there was "no evidence that [the licensee] actually infringed the licensed patents or that the value of potential infringement was comparable to the reasonable value here," and (4) "the patentee further discounted the royalty amount to account for a potential judgment of invalidity if the case continued to trial"); *Viatech Techs. v. Adobe*, No. 20-cv-358-RGA, 2023 WL 5975219, *15 (D. Del. Sept. 14, 2023) (excluding expert testimony regarding Microsoft settlement given "there is little probative value… in informing a hypothetical negotiation"); *Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F. Supp. 3d 466, 496 (D. Del. 2019) (excluding expert testimony regarding reasonable royalty rate based on settlement agreement where expert "engages in no analysis of the underlying litigation and how it may have affected the royalty rate."); *Sprint Commc'ns Co. v. Comcast IP Holdings, LLC*, No. 12-cv-1013, 2015 WL 456154, at *2 (D. Del. Jan. 30, 2015) (excluding litigation settlements where expert identified but did not account for differences

between the settlements and hypothetical reasonable royalty agreement); *AVM Techs., LLC v. Intel Corp.*, 927 F. Supp. 2d 139, 144 (D. Del. 2013) ("single settlement agreement on a different patent without any analysis of the settlement context is not a reliable method for calculating damages.")

Niantic's argument that patent settlements are always "highly probative" is not supported by any of the three cases that it cites. Opp. 5:11–18. *Ericsson v. D-Link Systems*, 773 F.3d 1201, 1227 (Fed. Cir. 2014) never addresses when a litigation settlement might possible be used as a comparable license for a reasonable royalty determination and never even uses the word "settlement." *Prism Technologies v. Sprint Spectrum* says only that "a settlement involving the patented technology can be probative of the technology's value" and then only "if that value was at issue in the earlier case." 849 F.3d 1360, 1369 (Fed. Cir. 2017). Here, Niantic's expert seeks to rely on a settlement that does not involve the '051 Patent at all. *Elbit Systems Land & C4I v. Hughes Network Systems* found that a damages expert's consideration of a settlement provided substantial evidence for a jury's damages award, but only after that expert had adjusted the royalty figure from the prior agreement to account for the factual differences. 927 F.3d 1292, 1299–1300 (Fed. Cir. 2019). Here, Ms. Rowe alleges the litigation settlement was comparable merely because it [REDACTED], ECF 252-4 (Rowe Depo.) at Tr. 134:3–8, and because [REDACTED] [REDACTED]. ECF 252-3 at ¶ 89. Although Ms. Rowe purports to opine on the economic comparability of the settlement, much of that evidence is superficial or sorely insufficient to show economic comparability. ECF 252-3 at ¶¶ 86–99; Opp. 6:2–11.

Importantly, what is absent from Ms. Rowe's report is any actual adjustment of the lump-sum to properly account for factual differences, such as (1) the nature of the '051 Patent was radically different from the [REDACTED] that were the subject of the settlement, (2) the patents in the settlement were more likely than not invalid because [REDACTED], (3) there had been no showing of infringement as to the patents in the settlement and [REDACTED] [REDACTED] that [REDACTED], (4) [REDACTED] [REDACTED] in the settlement by [REDACTED] [REDACTED], and (5) the settlement occurred [REDACTED] when expected

litigation costs and uncertainty were highest. ECF 252-3 at ¶¶ 92–96.

Accordingly, at best, Ms. Rowe's testimony about the settlement has limited probative value, which is outweighed by the risk of prejudice under Federal Rule of Evidence 403. *See Plexxikon*, 2021 WL 97544, at *7 (excluding expert witness testimony based on three settlement agreements because limited probative value outweighed by risk of prejudice); *Sprint Commc'ns* , 2015 WL 456154, at *2 (excluding litigation settlements because expert failed to account for differences between the settlements and hypothetical reasonable royalty agreement).

**III. DR. POLISH IS NOT QUALIFIED TO TESTIFY ABOUT GAME MARKETING ISSUES BECAUSE HE LACKS THE NECESSARY EXPERTISE**

Yet another problem with Niantic's proposed expert testimony relates to Dr. Polish's proposed testimony as to subject matter for which he has no demonstrated expertise. Mot., 6:16, 6:26, 6:28, 7:2–3, 7:6 (citing ECF 252-5 at 33, 36, 50 and ECF 252-6 at 22, 23, 25, 26, 28, 42, and 43). Dr. Polish fails to demonstrate expertise needed to explain the supposed preferences of game users for certain types of game play or particular game views. Given the incongruous nature of Dr. Polish's stated expertise and his opinions, these opinions should also be excluded.

Niantic responds that Dr. Polish is offered as a person of ordinary skill, which somehow allows him to testify about topics outside of his own expertise in order to support Niantic's obviousness claims. Opp., 7:6–18. However, there is no patent law exception to Rule 702's requirements that expert witnesses testimony must either be based on the expert's "scientific, technical, or other specialized knowledge," "sufficient facts or data," and "reliable principles and methods" and their application to the facts of the case. *Cooper v. Brown*, 510 F.3d 870, 943 (9th Cir. 2007) (expert testimony must "relate to scientific, technical or other specialized knowledge, which does not include unsubstantiated speculation and subjective beliefs."); *see also Edwards Lifesciences Corp. v. Meril Life Scis. Pvt. Ltd.*, No. 19-cv-6593-HSG, 2022 WL 254348, *10 (N.D. Cal. Jan. 27, 2022) (excluding testimony of expert cardiac surgeon in a patent case regarding alleged harm to plaintiff's business reputation due to lack of expertise). Nor can cross-examination fix this problem. *See GPNE Corp. v. Apple, Inc.*, No. 12-cv-2885-LHK, 2014 WL 1494247, at *6 (N.D. Cal. Apr. 16, 2014) ("Apple cannot cross-examine Mr. Dansky on his

assertions, all of which fundamentally reduce to taking his opinion based on 30 years of experience for granted.").

Niantic also argues in a footnote that Dr. Polish has marketing experience about "consumer-facing software." Opp. 7 n.4. Whatever that means, Niantic fails to show that Dr. Polish has any experience relating to software games or mobile games, and without at least such experience, he simply is not qualified to give opinions about game users preferences, or game users desires for particular views within the games. Mot., 6:14–7:6.

Niantic misleadingly argues in another footnote that Dr. Polish "has testified in gaming patent cases," including one involving Nintendo . Opp. 8 n.5. However, that litigation related to "motion-sensing devices which detect motion and generate wireless signals based on that motion." *Creative Kingdoms, LLC v. Int'l Trade Comm'n*, 588 F. App'x 993, 994 (Fed. Cir. 2014). In any case, Niantic fails to show that Dr. Polish has ever been admitted by any court to testify as an expert about game users preferences, or game users desires for particular views within the games as he is trying to do in this case.

Dr. Polish's proposed testimony as to marketing issues should be excluded.

## IV. DR. POLISH'S ALLEGATIONS THAT THE '051 PATENT INVENTION IS "GENERIC" AND "CONVENTIONAL" ARE NOT PROPERLY SUPPORTED AND SHOULD BE EXCLUDED

The last portion of NantWorks's motion to exclude relates to Dr. Polish's opinions that in 2011 the subject matter of the '051 Patent claims allegedly was "generic" and "conventional." Because Dr. Polish fails to properly support these opinions, this testimony should be excluded. Mot. 8:18–9:11.

Niantic's opposition on this point amounts to misrepresentations and misdirection. First, Niantic falsely claims (Opp. 9:13–14) that NantWorks failed to provide Dr. Polish's report, but NantWorks attached the entire report as an exhibit to its motion. ECF 252-5. Second, Niantic says that the bases for Dr. Polish's opinions are contained in the "Technology Background," "Overview of the '051 Patent," and "Patent-Ineligible Subject Matter" sections of the report. Opp. 9:14–19. Yet, Niantic fails to point to any actual disclosure in any of these sections to support the

statements in paragraphs 239 and 248 alleging that the subject matter of the '051 Patent claims were "generic" and "conventional."

Niantic also points to hundreds of pages of claim charts as allegedly supporting Dr. Polish's opinion (Opp. 9:14–19), but again Niantic provides no specific citation to particular facts or data showing that all of the features of the '051 Patent claims were in fact generic and conventional. If Dr. Polish's opinion is that various claim features are found in the art and therefore these features must be "generic" and "conventional," it would be error to admit such testimony. ECF 252-8 at Tr. 155:4–12 (alleging that "measuring orientation and rendering a display" as in the '051 Patent claims were known, generic and conventional based on "pieces of prior art.") The mere disclosure in a prior art reference does not make a claim feature well-understood, routine, and conventional. See, e.g., *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018) ("Whether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art.").

Niantic's suggestion that Dr. Polish's testimony sheds light on why he gave the "generic" and "conventional" opinions is simply false. Quite the contrary, it appears that Dr. Polish had no idea how to support "his" opinions and had been trained by counsel to make vague references to his report. *See, e.g.,* ECF 252-8 at Tr. 128:13–28 (when asked to explain how Dr. Polish determined that pieces of the '051 Patent claims were not technological in nature, Dr. Polish could not do so beyond pointing to three paragraphs and alleging the claims "are very high level and abstract and don't provide a technological solution.").

Finally, the failure to provide "sufficient facts or data" or to apply "reliable principles and methods" means that Dr. Polish's "generic" and "conventional" opinions are no more than unsubstantiated speculation and subjective beliefs. Such *ipse dixit* testimony is properly excluded. *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."). Nor can cross-examination fix this problem. *See GPNE*, 2014 WL 1494247, at *6 ("Apple cannot cross-examine Mr. Dansky on his assertions, all of which fundamentally reduce to taking his opinion based on 30 years of experience for granted.").

## V. CONCLUSION

For the foregoing reasons, this Court should grant NantWorks's Motion to Exclude the testimony of Ms. Rowe and Dr. Polish.

Respectfully submitted,

DATED: May 16, 2024

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By: */s/ Matthew K. Blackburn*
Matthew K. Blackburn
Evan E. Boetticher

Attorneys for Plaintiffs NANTWORKS, LLC and NANT HOLDINGS IP, LLC